JOHN ARRUDA SANTOS *vs.* JOSE L. BETTENCOURT & others.[1]

No. 94-P-300.

Middlesex. September 19, 1995. - February 23, 1996.

Present: BROWN, JACOBS, & PORADA, JJ.

*Negligence,* Construction work, Scaffolding. *Statute,* Construction. *Words,* "Building."

In a negligence action, summary judgment was properly entered for the defendant where it was not shown that the defendant knew or should have known that a certain scaffolding, on which the plaintiff was injured, was dangerous. [91]

The term "building" found in G. L. c. 143, § 51, refers to public and commercial structures and does not encompass single family houses, with the result that the owner of a single family house was not liable under the statute for an injury caused by an alleged violation of the State Building Code on the premises. [91-94]

CIVIL ACTION commenced in the Superior Court Department on August 23, 1991.

The case was heard by *Stephen E. Neel,* J., on a motion for summary judgment.

*Michael Najjar* for the plaintiff.

*Peter J. McCue* for Francisco A. Meneses.

JACOBS, J. The plaintiff brought this action in the Superior Court for injuries suffered on June 15, 1989, when a scaffold on which he was working collapsed. The scaffold had been erected at a single family house owned by the defendant, Francisco A. Meneses, by the plaintiff's employers, the defendants Bettencourt, who had been engaged by Meneses to install a new roof.

Aside from several claims against the Bettencourts, the

[1]Maria F. Bettencourt and Francisco A. Meneses.

plaintiff's complaint[2] also contains a count alleging that the scaffold from which he fell was "unsafe [and] dangerous," and "makeshift . . . consisting of two ladders with a plank between them," and that the defendant Meneses knew or should have known of the dangerous scaffold and negligently allowed it to remain at his property for several days.

The defendant Meneses, in a motion for summary judgment and for separate entry of judgment, acknowledged the dangerousness of the "makeshift scaffold" but argued that he exercised no direction or control over the plaintiff or the roofing operation. A judge of the Superior Court allowed the motion on the ground that there was no evidence that Meneses exercised the level of control necessary to impose liability. He also indicated that he rejected the plaintiff's claim of a "cause of action under G. L. c. 143, § 51." The plaintiff appealed, and this court, in an unpublished memorandum entered without oral argument, affirmed the separate judgment dismissing the plaintiff's complaint. The plaintiff then petitioned for a rehearing claiming that this court erroneously rejected his argument with respect to G. L. c. 143, § 51. That petition was allowed and the parties argued before a reconstituted panel.[3]

Upon further consideration, we again affirm the separate judgment dismissing the plaintiff's complaint against the defendant Meneses. As to the plaintiff's common law negligence claim, we rest on the ground stated in our unpublished memorandum, namely that none of the summary judgment materials before us indicates that Meneses knew or should have known that the staging was dangerous.[4] As for the plaintiff's claim under G. L. c. 143, § 51,[5] we conclude that section is not applicable to a single family house.

General Laws c. 143, § 51, as amended through St. 1993,

[2]The complaint was not part of the record on appeal but was called up by us after the case was argued.

[3]The plaintiff's petition for rehearing was filed and allowed after Justice Fine, a member of the original panel, had retired.

[4]On appeal, the plaintiff contends that this claim is not based on control by Meneses of the roofing operation, but rather on his common law duty as a homeowner to warn of known or easily discoverable dangers.

[5]Notwithstanding that this statute is not expressly mentioned in the plaintiff's complaint, it apparently was the subject of argument before the judge and was discussed in his decision. It also has been briefed to us, and the defendant, other than noting the absence of specific reference to it in

c. 495, § 35, provides in pertinent part: "The owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any of said provisions." If this statute were applicable to a single family house, the defendant would not be entitled to summary judgment because the plaintiff has demonstrated that there is a genuine issue as to whether a violation of the State Building Code may have contributed to the plaintiff's injuries.

We begin our analysis with the words of the statute serially listing places or structures to which it applies. Each of the elements of that series, other than the last ("building"), specifically describes a public or commercial use. The last element, "building," is a general word that under either its common definition or its statutory definition takes a literal meaning that is substantially more extensive than the specific elements preceding it. Accordingly, under the doctrine of ejusdem generis, we treat the specific words as identifying a class of commercial and public uses and restrict the general word "building" to structures within that class. *Haas* v. *Breton*, 377 Mass. 591, 595 (1979) (" 'A general term in a statute or ordinance takes meaning from the setting in which it is employed. The literal meaning of a general term in an enactment must be limited so as not to include matters that, although within the letter of the enactment, do not fairly come within its spirit and intent.' *Kenney* v. *Building Commr. of Melrose*, 315 Mass. 291, 295 [1943]"). See *Powers* v. *Freetown-Lakeville Regional Sch. Dist. Comm.*, 392 Mass. 656, 660 & n.8 (1984); 2A Singer, Sutherland Statutory Construction § 47.17 (5th ed. 1992). We need not define the class precisely except to note that it is characterized by public and commercial structures and that the context does not encompass a single family house.

The definition of the term "building" in G. L. c. 143, § 1, as appearing in St. 1972, c. 802, § 12, does not compel a different interpretation of § 51. By defining "building" as "a

the complaint, has not pursued the omission of reference to the statute as a basis for affirmance.

combination of any materials, whether portable or fixed, having a roof to form a structure for the shelter of persons, animals or property," it ascribes the broadest of meanings, suited generally to the many appearances of "building" in the regulatory provisions of §§ 1 through 100 of chapter 143. If that expansive definition were applied literally to § 51, it would include within its reach the specific structures serially described in that section, rendering those descriptions superfluous. It is precisely such a situation to which the doctrine of ejusdem generis applies. See 2A Singer, *supra* at 189.

The recent legislative history of G. L. c. 143, § 51, favors this interpretation. After the court in *St. Germaine* v. *Pendergast*, 411 Mass. 615 (1992) (*St. Germaine I*), held that the statute "is not meant to apply to a single family home that is under construction," *id*. at 619, the Legislature enacted St. 1992, c. 66, which, in part, added to § 51 a provision that "[a]ny person who obtains a permit pursuant to the state building code to erect, construct, or demolish a building or structure shall be liable to any worker or other person for all injuries and damages that result from a failure to provide a safe work place . . . ." That legislation was enacted "[i]n a clear response" to *St. Germaine I*. *St. Germaine* v. *Pendergast*, 416 Mass. 698, 701 (1993) (*St. Germaine II*). In its decision holding that the amendment could not be applied retrospectively, the court in *St. Germaine II*, at 702, stated that "the statutory language compels the conclusion that § 51, as amended, embraces a single-family house." Approximately two weeks after the decision in *St. Germaine II*, the Legislature deleted that language. See St. 1993, c. 495, § 35.

Nothing in the decided cases compels us to construe G. L. c. 143, § 51, as applying to a single family house. *St. Germaine I*, by limiting its holding to the precise facts presented, involving a single family house under construction, did not require application of § 51 to all single family houses not under construction. In *Commonwealth* v. *Duda*, 33 Mass. App. Ct. 922 (1992), the only other pertinent reported decision that has come to our attention, this court held that "a watchmen's cottage in a commercial marina[ ] qualified as a building" under § 51 even if the cottage was considered to be residential. *Id*. at 923. We do not construe that decision, involving the reversal of criminal convictions for violation of

the State Building Code, as subjecting the owners of a single family house, which is not connected with a commercial enterprise, to a new civil cause of action. The large number of owners of single family houses in the Commonwealth should not be exposed to expanded civil liability deriving from the regulatory provisions of chapter 143 except by express and clear legislation evidencing that intention. See *Lindsey* v. *Massios*, 372 Mass. 79, 84 (1977); *St. Germaine I*, 411 Mass. at 620.

*Judgment affirmed.*