Luis Carlos Osorno *vs.* Peter Simone & others,[1] trustees.[2]

No. 99-P-2134.

Suffolk. December 4, 2001. - December 3, 2002.

Present: Gelinas, Dreben, & Mills, JJ.

*Condominiums,* Management. *Real Property,* Condominium. *Strict Liability.*
*State Building Code,* Residential condominium. *Words,* "Building."

The term "building" in G. L. c. 143, § 51, refers to a class of public and
commercial buildings where protection of the public warrants the applica-
tion of strict liability, and does not encompass a residential condominium;
therefore, this court concluded that the trustees of a condominium were not
strictly liable to the plaintiff under the statute for an injury caused by a
violation of the State Building Code on the premises, where the fact that
some of the units were rented by their owners did not convert the
condominium to a commercial enterprise, and where the condominium's
common areas, although available for use by certain members of the
public, were not inherently "public" in the same sense as commercial
buildings. [615-620]

Civil action commenced in the Superior Court Department on
September 25, 1996.

The case was tried before *Carol S. Ball,* J.

*Maureen Bailey Counihan* for the plaintiff.

*John S. Stadler* for the defendants.

*William DeBear & Henry A. Goodman,* for Attorneys' Com-
mittee of Community Associations Institute, New England
Chapter, amicus curiae, submitted a brief.

Gelinas, J. We are asked to decide in this case whether the
provisions of G. L. c. 143, § 51, imposing strict liability for
injuries caused by violations of the State Building Code upon
those in control of certain types of "buildings," apply to the

---

[1]Susan Goldstein, Brian LeFauce, and Peter DiDomenico.

[2]The defendants have been named solely in their capacity as trustees of the
Mariners Landing Condominium Trust.

Mariners Landing Condominiums and the defendant trustees.[3] We conclude that in this case the statute is not applicable, and we affirm a judgment of the Superior Court in favor of the trustees.

We take the facts from the findings of the Superior Court judge, supplemented by uncontroverted material in the record. Mariners Landing Condominiums is a residential condominium, established pursuant to G. L. c. 183A. Unit owners are permitted to rent or lease their individual condominiums, and of the thirteen units in the condominium, three were in fact rented or leased. Certain of the exterior common areas of the condominium, albeit principally for the use of the unit owners, are accessible to the general public. The incident giving rise to the complaint here occurred while work was being done on an exterior wall, a common area not generally accessible to members of the public.

Plaintiff Luis Osorno, together with his coworker Fredy Suarez,[4] was injured while applying stain to the exterior of one of the common areas of the condominium. The injuries occurred when the two fell from scaffolding that they and their coworkers erected on the outside of the building. Both were employed by a painting contractor, Bossman, Inc. (Bossman), which in turn had been engaged by the trustees to paint or stain the exterior of the condominium units and interior hallways, and to replace certain areas of rotted wood and plaster in the carport area. The scaffolding was approximately twelve feet high, on which Osorno and Suarez mounted a forty-foot extension ladder. Suarez remained on the scaffold to hold the ladder. Osorno climbed the ladder to apply stain. At a certain moment the scaffold fell away from the wall and the ladder fell to the ground. After investigation, the police and the Occupational Safety and Health Administration (OSHA) concluded that the ladder had slipped through or between the planks in the center of the scaffold. As the ladder came down through the planks,

---

[3]The plaintiff does not challenge the jury's verdict that the trustees were not negligent.

[4]Fredy Suarez, a plaintiff below, did not file a notice of appeal and is not a party to this appeal. As the jury fixed the damages suffered by Suarez at $50,000, an amount less than he received in settlement, he would be ineligible for any further award no matter the outcome of this case.

the scaffold toppled away from the house. Osorno fell to the ground. It is undisputed that he suffered substantial and permanent injuries as a result of the fall.

Citations were issued against Bossman for, among other things, violating various Federal regulations incorporated into the State Building Code as set forth in the margin.[5] There was ample evidence introduced at trial that the scaffold did not comport with the code and that neither Osorno nor Suarez had received any training in the use of scaffolds and ladders.

Osorno brought suit against Bossman for injuries caused by negligence. In a second amended complaint Osorno also brought a claim against the trustees, alleging that their negligence caused his injuries, and also asserting that the trustees, as nominal owner and party in control of the common areas of the condominium, were strictly liable for damages pursuant to G. L. c. 143, § 51, as his injuries were caused as a result of violations of the State Building Code.

Prior to trial, Osorno and Suarez settled their claims against Bossman and certain other persons. The remaining parties agreed that the applicability of G. L. c. 143, § 51, to the facts of this case was a question of law for the trial judge, and that, if necessary, the issue would be determined after the jury decided both claims. Following trial, the jury found that the trustees were not negligent in connection with the accident. The jury did find that there was a violation of the State Building Code, that the violation was the cause of Osorno's injuries, and that Osorno had suffered damages in the amount of two million dollars, an amount that greatly exceeded his settlement. After hearing argument with respect to the applicability of the statute, the trial judge issued a memorandum and order for judgment, finding that the Mariners Landing Condominiums, being a relatively small condominium, was not a "building" within the meaning of G. L. c. 143, § 51. Osorno's sole argument on appeal is that the judge erred in determining that, in circumstances such as these, the word "building," as used in G. L. c. 143, § 51, does not apply to a residential condominium where some of the units

[5] 29 C.F.R. §§ 1926.451(d)(10), 1926.451(d)(3), 1926.1053(b)(6), 1926.1060(a), and 1926.21(b)(2).

are rented by their owners, and where there are common areas to which members of the public are invited.

We set forth the pertinent language of G. L. c. 143, § 51, as amended through St. 1993, c. 495, § 35:

> "The owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any of said provisions."

In our decision in the case of *Santos* v. *Bettencourt*, 40 Mass. App. Ct. 90, 93 (1996), we determined that the word "building" in § 51 was limited, by the words preceding it in the statute, to structures that had a "commercial or public" use. That decision declared owners of single family houses to be excluded from the strict liability provision of G. L. c. 143, § 51. *Id.*[6] We concluded that the broad definition of "building" in G. L. c. 143, § 1, as appearing in St. 1972, c. 802, § 12, which defines "building" as "a combination of any materials, whether portable or fixed, having a roof, to form a structure for the shelter of persons, animals or property," was limited in § 51 by application of the principle of ejusdem generis. *Id.* at 92-93. By placing the words "or building" after the descriptive words "place of assembly," "theatre," "special hall," "public hall," "factory," "workshop" and "manufacturing establishment," the Legislature intended the strict liability provisions of the statute to apply only to public or commercial structures, and not to single family houses. *Id.*

Osorno argues that residential condominiums, such as Mariners Landing Condominiums, are markedly different from single family houses, and that the statute imposes liability on

---

[6]We are mindful as well that, in a line of cases culminating in our recent decision of *Fox* v. *The Little People's School, Inc.*, 54 Mass. App. Ct. 578 (2002), our courts have held that a violation of the building code with respect to fire escapes and stair cases, except in cases of injury to someone fleeing from fire, is some evidence of negligence only, and does not result in strict liability for injuries otherwise suffered.

the organization of unit owners of the condominium, in this case, the trust; that unlike single family homeowners, condominium unit owners own their unit and an undivided interest in the common areas, making a condominium more than simply a collection of single family houses under one roof; that control of the common areas is relinquished to the organization of unit owners; that the common areas are open to and used by members of the public, and that, on occasion, certain of them have characteristics that approximate some of the structures and uses described in the statute, i.e., they may be used as a "place of assembly," a "theatre," a "special hall" or a "public hall"; and that unit owners may rent or lease their units, deriving income and making unit ownership a commercial enterprise.

Osorno observes that the Mariners Landing Condominium Trust is a separate legal entity that has exclusive control over the common areas (see *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 237 [1985]); that the trustees have the power and responsibility to maintain the common areas and to impose fees on the unit owners for such maintenance (see *Blood* v. *Edgar's, Inc.*, 36 Mass. App. Ct. 402, 405 [1994]); and that the trustees have the sole power to conduct litigation concerning the common areas (see *Strauss* v. *Oyster River Condominium Trust*, 417 Mass. 442, 445 [1994]). See G. L. c. 183A, § 10(*b*)(4). Thus, Osorno argues, the trustees, in their control over the common areas, are not owners of the residential units in any sense and act with regard to the common areas in a commercial way.

As established in G. L. c. 183A, a residential condominium unit has attributes of a single family house. Each unit owner receives an exclusive fee interest in the individual unit. In addition, each unit owner becomes an owner, in common with other unit owners, of the common areas and facilities of the development. G. L. c. 183A, § 5. Conformably with G. L. c. 183A, §§ 8(*d*) and 10, the person submitting real estate to the regime of c. 183A must form an organization of unit owners to manage the condominium on behalf of all unit owners. If the unit owners association is a trust, the unit owners elect trustees to conduct the affairs according to the by-laws of the trust. The trustees are not charged with running either a commercial enterprise or a public facility; they act for and on behalf of the

unit owners, not for the purpose of generating income or of providing management of spaces designed to attract public assembly, but simply to facilitate what would otherwise be the work of management of residential property by numerous tenants in common. See G. L. c. 183A, §§ 8(*i*), 10.

Our appellate courts have considered the scope of the word "building," as applicable to residential structures, on several occasions in recent years. In *Commonwealth* v. *Duda*, 33 Mass. App. Ct. 922, 923 (1992), we reasoned that a watchman's residential cottage in a commercial marina qualified as a "building" under G. L. c. 143, § 51, for the purpose of notice as a precedent to a prosecution for violation of the State Building Code. Noting that the word "building" was the ultimate in the series of structures described in § 51, and relying further on the definition of a building found in G. L. c. 143, § 1, as appearing in St. 1972, c. 802, § 12, as a "combination of any materials . . . having a roof, to form a structure for the shelter of persons, animals or property," we concluded that the cottage was a "building" under the statute despite its residential nature. *Id.* That approach to the definition of "building" in § 51 was limited in the *Santos* case. There, the court was confronted for the first time with the issue whether a single family dwelling, not connected with a commercial enterprise, against which a contractor had erected a faulty scaffold for repair work, qualified as a "building" under § 51 for purposes of attaching strict liability to the homeowner. We concluded that the word "building" as used in § 51 was not simply the ultimate in a series of described structures, but rather that a single family house, although a "building" according to the definition set forth in § 1, was not in character a "public or commercial structure" such that strict liability should attach for damages causally related to violation of the State Building Code. *Santos* v. *Bettencourt*, 40 Mass. App. Ct. at 92-93. We further concluded that the *Duda* decision should not subject owners of a "single family house, which is not connected with a commercial enterprise, to a new civil cause of action." *Id.* at 94.

In *Commonwealth* v. *Eakin*, 427 Mass. 590, 592 (1998), the court affirmed the conclusion reached in the *Santos* case, citing *Santos* with approval and declaring that " '[b]uilding' must be

read to refer to structures used for purposes like those of the other structures listed [in § 51]." *Id.* at 592. The *Santos* case did not attempt an exhaustive definition of the word "building," rather noting "that [the class of 'buildings' to which § 51 applies] is characterized by public and commercial structures and that the context does not encompass a single family house." *Santos* v. *Bettencourt, supra,* at 92. We think that the Mariners Landing Condominiums, residential in description and nature, as well fall outside that class of public and commercial buildings where protection of the public warrants the application of strict liability.

We are unpersuaded that rental of three of the thirteen units creates a commercial enterprise such as to bring the condominium structure within § 51's definition of the word "building." While owners are permitted to lease or rent their respective units, any such rental is to be done individually by the unit owner; there is no evidence in the record that the trustees were involved, either by direction of the condominium rules or informally, in soliciting leases and rentals for the condominium units, or that they acted as managers of the units as investment property for absentee owners. Only three of the units were actually rented; the remaining ten were owner-occupied. While leasing or renting premises is subject to substantial regulation favoring the tenant and members of the public who might be visitors on the premises,[7] the rental here should not subject the trustees to the strict liability provision of G. L. c. 143, § 51.[8] The Mariners Landing Condominium itself, and the renting or leasing of individual units by individual own-

---

[7]Landlords renting residential property warrant that the premises will be delivered and maintained in a habitable condition, and, at a minimum, will be kept in conformity with the State sanitary code. *Boston Hous. Authy.* v. *Hemingway,* 363 Mass. 184, 199 (1973). See *Wesson* v. *Leone Enterprises, Inc.,* 437 Mass. 708 (2002). In the rental of a dwelling unit, without regard to length of term or presence or absence of furniture, there is an implied agreement by the landlord that the rented unit complies with the minimum standards prescribed by the building code, that the landlord will do whatever the building or sanitary codes require for compliance during the term of the rental, and that the landlord will be liable for personal injuries caused by a breach. *Crowell* v. *McCaffrey,* 377 Mass. 443, 451 (1979). See *Simon* v. *Solomon,* 385 Mass. 91, 96 (1982).

[8]The rental of dwelling units in rooming houses, large apartment buildings or smaller multiple family tenements is the type of commercial enterprise,

ers, differs markedly from the commercial venture typified by a large apartment building or even a smaller two- or three-family tenement building.

There is no evidence in this case that the public was solicited to enter the common areas on a regular basis, or that commercial or public activities and events were promoted on the grounds. Use of the structures described in § 51, by contrast, involves invitation of a significant number of the public to come on the premises for relatively short durations of time, although perhaps on a repeated basis. Use of such structures provides the public with little or no opportunity or incentive to determine whether the structure satisfies the requirements of the building code, or whether there are dangers lurking unsuspected.

Each of the building categories described in the statute — e.g., "a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment" — have an intrinsic public or commercial character; they are places where the public may come together in numbers for brief, intermittent use. Condominium common areas, although available for use by certain members of the public, are not inherently "public" in the same sense as the specific structures identified in the statute; they were not designed and maintained for continuing public assembly. The common areas of Mariners Landing Condominiums were essentially for the use of the unit owners, who held an ownership interest in the areas; they are private property, subject only to incidental use by individual members of the public. They are not places where members of the public were invited to assemble, for either commercial or other purposes.

Our unwillingness to expand the scope of § 51 to include Mariners Landing Condominiums does not deprive Osorno of a remedy under established negligence principles. Here, Osorno had every opportunity to assert his negligence claim and did so.

involving the public, that could in a proper case invoke the strict liability provisions of the statute; whether buildings used for such purpose are included within the ambit of § 51 as "buildings" for the purpose of attaching strict liability for State Building Code violations, or whether their primarily residential use would exclude them, has not been reached. The case of *Festa* v. *Piemonte*, 349 Mass. 761 (1965), involving a claim of strict liability, partly under § 51, for injuries suffered in a five-unit tenement, was decided on other grounds.

The jury returned a verdict indicating that the trustees were not negligent.

We think that the reasoning in *Santos*, that "[t]he large number of owners of single family houses in the Commonwealth should not be exposed to expanded civil liability deriving from the regulatory provisions of chapter 143 except by express and clear legislation evidencing that intention," *Santos* v. *Bettencourt*, 40 Mass. App. Ct. at 94, is applicable to the Mariners Landing Condominiums.

Given the foregoing, we need not reach the second issue asserted by the trustees, that Osorno's evidence of causation was based upon expert opinion that should not have been admitted in evidence.

*Judgment affirmed.*