Gants , J.
According to the complaint, on September 10, 2000, the plaintiff, Jean Stuart (“Stuart"), was the guest of a tenant in an apartment unit at 69 Union Street in Marlborough owned by the defendant Dominic Merloni (“Merloni”). That day, she was injured when she struck her head on the doorway header at the bottom of a stairway connecting the second and third floors of the apartment unit. Stuart alleges that the construction and condition of the doorway header was defective, unsafe, and in violation of the State Building Code. She has brought claims in this action against Merloni alleging negligence (Count I), violation of G.L.c. 143, §51 (Count II), and violation of G.L.c. 93A (Count III). Merloni now moves to dismiss Count 11, contending that Stuart has failed to state a claim under G.L.c. 143, §51, as judicially interpreted. After hearing, solely for the prudential reasons stated below, the motion to dismiss Count II is DEFERRED until after the jury has returned its verdict.
DISCUSSION
Until 1972, G.L.c. 143, §51 provided that “whoever owns any building . . . subject to sections [21, 24-28, inclusive, and 30]... shall cause the provisions thereof to be observed, and such person shall be liable to any person injured for all damages caused by a violation of the provisions of said sections.” M.G.L.A. c. 143, §51, Historical and Statutory Notes. Before it was amended in 1972, this statute essentially provided for strict liabiliiy in civil cases against the owners of buildings for violations of the following sections of Chapter 143:
Section 21, which required building owners to keep fire escapes and other means of escape from fire in good repair and ready for use, see Fox v. The Little People’s School Inc., 54 Mass.App.Ct. 578, 580 (2002); Repucci v. Exchange Realty Co., 321 Mass. 571, 572 (1947);
Sections 24-27, which also dealt with fire safety issues. See Fox, 54 Mass.App.Ct. at 580 n.4;
Section 28, which dealt with building inspections and the issuance of certificates of occupancy “specifying the number of persons for whom the egresses and means of escape from fire are sufficient,” id.; and
Section 30, which required those who made changes in buildings that had received a certificate under section 28 to notify a building inspector so that a new inspection could be made, id.
In 1972, as part of “An Act Establishing the State Building Code Commission for the Adoption and Promulgation of a State Building Code,” the current version of G.L.c. 143, §51 replaced the earlier version. St. 1972, c. 802 (“the 1972 Act”). The 1972 Act established the State Building Code Commission for the purpose of adopting and promulgating a state building code. St. 1972, c. 802, §1; G.L.c. 23B, §16, presently recodified at G.L.c. 143, §93 by St. 1984, c. 348, §2. The Commission was empowered to “formulate, propose, adopt and amend rules and regulations” related to the construction, repair, and maintenance of all buildings. St. 1972, c. 802, §1; G.L.c. 23B, §17(a), presently recodified at G.L.c. 143, §94 by St. 1984, c. 348, §2. These rules and regulations were to comprise and collectively be known as the state building code. Id. The existing version of G.L.c. 143, §51 promulgated in the 1972 Act provides:
The owner, lessee,... or occupant, being the party in control, of a . . . building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any of said provisions.
St. 1972, c. 802, §35; G.L.c. 143, §51. On its face, the new Section 51 appears to provide for strict liability in civil cases against the owners of buildings for any violation of the state building code, not merely for the particular fire safety violations specified in the earlier version. Indeed, the provisions specifically identified in the earlier version of G.L.c. 143, §51 (G.L.c. 143, §§21, 24-28, and 30) were all repealed by the 1972 Act. St. 1972, c. 802, §28.
*454 In McAllister v. Boston Housing Authority, 429 Mass. 300 (1999), the Supreme Judicial Court considered a slip and fall case where the plaintiff sued the defendant Housing Authority on a variety of common-law claims, including negligence, for the defendant’s purported breach of its duty to remove snow and ice. The Court held that the trial judge properly instructed the jury that a violation of the state sanitary and building codes may be considered as evidence of negligence, but need not be conclusive on the issue of negligence. Id. at 304. In a footnote, the Court added:
The plaintiff also argues that the judge erred by not reading a proposed jury instruction stating that the defendant “shall be liable . .. [for] a violation of the State Building Code,” citing G.L.c. 143, §51. There was no error. “(N]one of the benefits of G.L.c. 143, [§51] is ‘available to persons using stairways and egresses for purposes other than escape from danger from fire.’ ” Festa v. Plemonte, 349 Mass. 761, 761 (1965), quoting Landers v. Brooks, 295 Mass. 344, 348 (1936).
Id. at 304 n.5. Of course, the Supreme Judicial Court’s reliance on Festa was misplaced, because the G.L.c. 143, §51 that was effective in 1965, when Festa was decided, was different from and far narrower in scope than the G.L.c. 143, §51 that was enacted in 1972 and remained in effect in 1999, when McAllister was decided. In Festa, the plaintiff, having adjusted the television antenna on the roof, was injured when he fell after he closed the door on the roof that led to the stairwell. 349 Mass, at 761. Even though the plaintiff had not been injured when fleeing a fire, he sought recovery under the provisions of G.L.c. 143, §51 that provided for strict liability for a violation of G.L.c. 143, §21. Id. The Court’s holding in Festa made clear that recovery under the pre-1972 version of G.L.c. 143, §51 that provided for strict liability for a violation of G.L.c. 143, §21 was limited to those who used stairways and egresses to escape from a fire, not simply to walk to their apartment. It certainly appears that the McAllister Court unwittingly erred by imposing upon the 1972 version of G.L.c. 143, §51 a meaning that applied only to the pre-1972 version and indeed only to the pre-1972 version to the extent it addressed a violation of the repealed G.L.c. 143, §21.
In Fox, the Appeals Court held that this apparently erroneous interpretation of the existing G.L.c. 143, §51 in the McAllister footnote was “controlling” and constituted “a limitation on its facially broad language.” 54 Mass. App Ct. at 582. The Appeals Court concluded, “Notwithstanding any conclusion we might reach were we writing on a clean slate, . . . the ‘appropriate circumstances’ for recovery under §51 are those in which a violation of the State building code results in an injury to someone fleeing a fire.” Id. The Appeals Court in Fox recognized that G.L.c. 143, §51 had been wholly revised and G.L.c. 143, §21 repealed by the 1972 Act, but it chose to assume that the Supreme Judicial Court knew this statutory history when it wrote the McAllister footnote and concluded that the McAllister Court in that footnote affirmatively decided to “importd into the new §51 the fire safely concerns the old statute embodied.” Id. at 581. The Appeals Court did not observe that the footnote was dictum, since the plaintiff in McAllister had not brought a strict liability count in his complaint. See McAllister v. Boston Housing Authority, 429 Mass, at 301.
The Appeals Court decision in Fox poses a practical dilemma for this Court. Even if the footnote in McAllister may not truly be controlling authority because of its mistaken reliance on a case that interpreted an earlier version of G.L.c. 143, §51 or because it is dictum, Fox certainly is controlling authority, even if the Appeals Court erred in finding McAllister to be controlling. If this Court were to apply the narrow interpretation of G.L.c. 143, §51 declared in Fox, then the defendant’s motion to dismiss the strict liability claim under G.L.c. 143, §51 should be allowed, because the plaintiff does not allege that she was injured while fleeing a fire. However, if the motion were allowed, the case would still proceed to trial on the negligence claim and evidence as to the violation of the state building code would still be admissible on the issue of negligence. The only practical consequence at trial of the allowance of this motion to dismiss would be that the jury would not make a specific finding as to whether the defendant violated G.L.c. 143, §51 and whether such a violation caused the plaintiffs injury, because such findings would not be necessary to resolve the negligence claim.
If the plaintiff were to lose at trial on her negligence claim and then appeal the allowance of this motion to dismiss, this Court believes that it is probable that she would ultimately prevail on her appeal, because the interpretation of G.L.c. 143, §51 set forth in Fox is based on the erroneous premise in the McAllister footnote and is contrary to the plain language of the statute. If the plaintiff were indeed to prevail on her appeal, she would need to try the case again, because the jury would not have decided the questions necessary to resolve the strict liability statutory claim.
Countless times, the Supreme Judicial Court has advised trial judges, when there is a close question as to whether to grant a motion for a directed verdict, to reserve decision, allow the case to be decided by the jury, and determine whether the jury’s verdict should stand through a motion for judgment notwithstanding the verdict. See, e.g., Smith v. Ariens Co., 375 Mass. 620, 627-28 (1978). The prudential reason for this guidance is that, if the judge were to err in finding that the evidence was not legally sufficient, the case need not be retried. See id. While that guidance does not generally apply to a motion to dismiss, it does under the unusual circumstances of this case. If this Court were to grant the motion now, finding Fox to be *455 controlling, the case would need to be tried twice if the plaintiffs appeal were to prevail. If this Court, however, were to defer consideration of the motion until the jury has returned its verdict, the evidence at trial would be the same, the jury would simply answer two more questions in its special verdict, and, regardless of the outcome of the appeal, the case would not need to be retried. Therefore, for prudential reasons, in view of the likelihood that the controlling authority in Fox would not survive on appeal, this Court DEFERS consideration of this motion to dismiss until after the jury has returned its verdict.
ORDER
For the reasons stated above, this Court hereby ORDERS that, solely for the prudential reasons stated above, the motion to dismiss Count II is DEFERRED until after the juiy has returned its verdict.