Connolly, Thomas E., J.

INTRODUCTION

This civil action arises out of a personal injuiy sustained by the plaintiff Gladys P. Gifford (hereinafter “Gifford” or “the plaintiff’) on Wednesday, March 28, 2001 at the premises owned and controlled by the defendants Dr. Hemy Sears and Sharon Bushnell (hereinafter “the defendants”).
The plaintiff has brought three claims as separate counts each alleging a separate cause of action, as follows: (1) Count I: Breach of the Warranty of Habitability: (2) Count II: Violation of G.L.c. 143, §51; and (3) Count III: Negligence.
The defendants have moved for partial summaiy judgment as to Counts I and II. Count I alleges that the dangerous condition of the staircase, which conditions(s) caused the plaintiffs fall and injuiy, constituted a breach of the implied warranty of habitability of the premises. Specifically, it is alleged that the breach was the defendants’ failure to have proper lighting and handrails for the staircase. Count II alleges the defendants violated G.L.c. 143, §51, astatute imposing liability upon owners for injuries caused on the premises resulting from their failure to comply with the provisions of G.L.c. 143, §51 and the State Building Code.

FACTUAL BACKGROUND

The plaintiff was injured while leaving her estranged husband’s one-bedroom apartment located above the garage at 11 Fayerweather Street, Cambridge, Massachusetts (hereinafter “the premises”). The defendants, Dr. Hemy Sears and his wife Dr. Bushnell reside in the main structure of 11 Fayerweather Street. The garage and its accompanying apartment were added to the premises by previous owners in 1939.
The defendants frequently house foreign graduate students who primarily reside on the third floor of the main structure in exchange for assistance with household maintenance. The plaintiff resides at 15 Hilliard Street, Cambridge, Massachusetts. She is separated from her husband, K. Dun Gifford, the tenant who rents the apartment owned by the defendants.
In the evening on March 28, 2001, the plaintiff visited Mr. Gifford at his apartment. It was already dark upon the plaintiffs arrival. After fifteen minutes, the plaintiff exited the apartment. She proceeded down the walkway in the dark, fell down the stairway, and sustained injuries to both of her legs. It is alleged that the position of the stairs in which the plaintiff fell had no railings of any type and had no lighting of any type. The light switch, which controlled the light for the bottom half of the stairs was located at the bottom of the stairs. Therefore, while a person walking up the stairs would have the ability to turn the light on for the lower section of the stairs, a person walking down the steps would have no way to turn on the subject light until he or she had already reached the bottom of the staircase.

DISCUSSION

Summaiy judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summaiy judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting *718 affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

A. Count II: Violation of G.L.c. 143, §51

G.L.c. 143, §51 creates an action of strict liability against the party who controls the premises for injuries resulting from violations of the State Building Code. The statute provides in pertinent part: “The owner, lessee, ... or occupant, being the party in control, of a. .. building shall comply with the provisions of this chapter and the State Building Code relative thereto, and such person shall be liable to any person injured for all damages by a violation of any said provisions.” St. 1972, c. 802 §35; G.L.c. 143, §51.
The defendants argue that the plaintiff does not have a cause of action under G.L.c. 143, §51 for two reasons: (1) the plaintiff does not allege that she was fleeing from a fire (a required element); and (2) the defendants do not own the requisite type of “building” that renders the statute applicable to them.

1. Interpretation and Applicability of G.L.c. 143, §51 for Non-fire Safety Violations of the State Building Code

There is conflicting case law whether the 1972 amended version of G.L.c. 143, §51, provides for strict liability in civil cases against the owners of buildings for any violation of the State Building Code or if it is restricted to causes of action whereby the plaintiff was injured fleeing a fire as specified in the earlier repealed version. See McAllister v. Boston Housing Authority, 429 Mass. 300, 301 (1999); Fox v Little People’s School 54 Mass.App.Ct. 578, 582 (2002); compare Stuart v. Merloni 2004 WL557187, *2-4 (Mass.Sup.Ct. Mar. 22, 2004) (17 Mass. L. Rptr. 453).
In Stuart, Judge Gantz points out that the Festa decision was based upon the 1965 version of the statute before the provisions were inserted establishing the State Building Code Commission for purposes of promulgating a State Building Code and the provision requiring the injury to have arisen from egress from a fire was repealed. 2004 WL 557187, at *2-3; see Festa v. Piemonte, 349 Mass. 761 (1965). Judge Gantz further argues that the Supreme Judicial Court’s reliance on Festa was misplaced when it limited applicability of the 1972 version of the statute to those plaintiffs who used egresses to escape from fire, despite the 1972 repeal of this language. Stuart 2004 WL 557187, at *2-4; MacAllister, 429 Mass. at 301. Moreover, the Appeals Court, though cognizant of the 1972 revisions, nonetheless also ruled that the “appropriate circumstances” for recovery under G.L.c. 143, §51 were those in which a violation of the State Building Code results in a injury to someone fleeing a fire, citing MacAllister as controlling authority. Fox, 54 Mass.App.Ct. at 582. This Court, like Judge Gantz, recognizes that even if MacAUister is not controlling because of its mistaken reliance on a case that interpreted the earlier version of G.L.c. 143, §51, Fox is controlling authority despite this Court’s opinion that strict liability is imposed for any violations of the State Building Code and not restricted to the particular fire safety violations. If the court were to apply the Fox court’s narrow interpretation of G.L.c. 143, §51, then the defendants are entitled to judgment as a matter of law on the strict liability claim should be allowed because the plaintiff does not allege that she was injured while fleeing a fire. However, if the motion were allowed, the case would still proceed to trial on the negligence claim and evidence as to the violation of the State Building Code would still be admissible on the issue of negligence. The only practical consequence at trial of the allowance of this motion for partial summary judgment would be that the jury would not make a specific finding as to whether the defendants violated G.L.c. 143, §51 and whether such a violation caused the plaintiffs injury, because such findings would not be necessary to resolve the negligence claim.
If the plaintiff were to lose at trial on her negligence claim and then appeal the allowance of this motion for partial summary judgment, it is possible that she would ultimately prevail on her appeal, and she would need to try the case again, because the jury would not have decided the questions necessary to resolve the strict liability statutory claim. Therefore, in following in Judge Gantz’s footsteps, this Court defers its decision on the defendants’ Motion for Partial Summary Judgment until after the jury has returned its verdict so that the case need not be tried twice if plaintiff were to prevail on appeal.
2. Interpretation of the Term “Buildings" for Purposes of the application of G.L.c. 143, §51
The defendants also contend they are not strictly liable for violations of G.L.c. 143, §51 on the ground that the statute does not apply to the premises because it is not a “building” for purposes of the statute. Massachusetts law interpreting the term “buildings” for purposes of the application of G.L.c. 143, §51 is also unresolved and equivocal.
The Appeals Court first determined that the word “building” in §51 was limited, by the words preceding it in the statute, to structures that had a “commercial or public” use. Santos v. Bettencourt, 40 Mass.App.Ct. 90, 93 (1996). That decision declared owners of single-family houses excluded from the strict liability provision of the statute. The Appeals Court then extended the exclusion to residential condominium units in Orsono v. Simone. See 56 Mass.App.Ct. 612, 619-20 (2002) (“Condominium common areas are not inherently ‘public’ in the same sense as the specific structures identifiedin [G.L.c. 143, §51); theywerenot designed and maintained for continuing public assembly”). However, in distinguishing the condominium unit from residential buildings that may be subject to *719 strict liability, the Orsono Court implied that “large apartment building[s] or even a smaller two- or three-family tenement building” may not enjoy the benefit of the exclusion. 56 Mass.App.Ct. at 619.
In 2002, the Supreme Judicial Court also visited this particular issue and extended the exclusion of the applicability from single-family houses established in Santos to owner-occupied two-family houses in which one unit is rented to a tenant. Banushi v. Dorfman, 438 Mass 242, 243-45 (“An owner-occupied two-family home in which the owner rents one unit to a tenant is not a ‘building’ within the terms of the statute”). The SJC reasoned that the Legislature could not have intended the word “building” in the statute to mean any and every structure. Banushi, 438 Mass, at 243. Even if the owner may derive some minimal income from rent, the SJC held that it is not the type of commercial, public use, assembly, or workplace structure contemplated by the statute. Id., citing Santos, 40 Mass.App.Ct. at 91.
Subsequent to Banushi, the Superior Court has addressed the issue most recently in 2004 and extended the scope of the exclusion to non-owner occupied three-family units. In Hristoforidis v. Fisher, Judge Fecteau held that G.L.c. 143, §51 does not apply to a 3-family residence. (17 Mass. L. Rptr. 574) 2004 WL 1109626 (Mass.Super. April 9, 2004). Relying on Banushi, Judge Fecteau agreed with the defendant that he was entitled to judgment as a matter of law for the G.L.c. 143, §51 violation cause of action because:
[the] statute does not apply to a 3-family residence, notwithstanding the fact that it is not owner-occupied, because it is not used for purposes like those of the other structures listed in Section 51. A three-family residence, whether owner-occupied or not, is not so remarkably different and significantly distinguishable from an owner-occupied two-family residence that it is more consistent with “[t]he rental of dwelling units in rooming houses, large apartment buildings or smaller multiple family tenements” that can be viewed as the “type of commercial enterprise, involving the public, that could in a proper case invoke the strict liability provisions of the statute.”
Hristoforidis, 2004 WL 1109626 (17 Mass. L. Rptr. 574) citing Orsono, 56 Mass.App.Ct. at 619, fn. 8.
Although it is clear that merely “renting one portion of one’s own home does not bring the homeowner within the terms of the statute,” it is unclear whether G.L.c. 143, §51 is applicable to premises present in this case. See Banushi, 438 Mass, at 243; Hristoforidis, 2004 WL 1109626. The Orsono Court implied that it may be applicable to two- or three-family homes but Banushi and Hrisoforidis subsequently held that it does not. However, in Banushi and Hristoforidis the premises at issue consisted of only one structure, whereby this case involves two separate dwelling units — one that is rented to tenants and one that is owner-occupied and occasionally houses nonpaying students. It is difficult to ascertain whether the defendants’ premises would fall within the tenement type structures which would presumably be subject to strict liability or if it is an owner-occupied structure where the owner derives some minimal rental income but is not commercial or for public use so as to bring it within the statute. Furthermore, the premises are distinguishable from condominiums because condominiums are owned and rented by individual owners rather than one owner. See Orsono, 56 Mass.App.Ct. 612, 618-19 (“[T]he renting or leasing of individual units by individual owners [in a condominium], differs markedly from the commercial venture typified by a large apartment building . . .”). The current trend of increasing the scope of the liability exclusion to condominium units and even to three-family residences despite the contrasting Orsono Court dicta guides the Court to hold that G.L.c. 143, §51 is not applicable to the defendants’ premises. However, this law is far from settled and there is no case directly addressing the similar situation whereby the premises consist of two separate dwelling units owned by only one person. Therefore, it is possible that if the Court were to find that the defendants are entitled to judgment as a matter of law, the plaintiff could prevail on appeal. For the same prudential reasons cited above, this Court will defer determination on this motion for partial summary judgment until after a jury verdict is Returned.
3. The State Building Code Is Applicable to the Premises, Even If It Was Built Prior to the 1972 revision of G.L.c. 143, §51, which established the Commission to Promulgate the Code
The defendants allege that the State Building Code, 780 CMR 1.00 et sec., particularly 780 CMR 103.1 which regulates the means of egress, does not apply to the premises because it was built prior to the 1972 enactment of the Code. As support for this claim, the defendants cite 780 CMR 1.02.5.2 which states in pertinent part: “Unless specifically provided otherwise in 780 CMR any existing building or structure shall meet and shall be presumed to meet the provisions of the applicable laws, Codes rules or regulations, bylaws or ordinances in effect at the time such building or structure was constructed or altered and shall be allowed to continue to be occupied pursuant to its use and occupancy, provided that the building or structure shall be maintained in accordance with 780 CMR 102.” The plaintiffs counter that the Code is applicable to the premises because the apartment was subsequently altered in 1979, after the Code was established. 780 CMR 102 also contains a provision that provides, in relevant part: “The construction, reconstruction, alteration, repair, addition, change in use or occupancy, demolition removal of all buildings and structures shall comply with [the Building Code].” Additionally, 780 CMR 102.5.5 requires that “Existing *720 buildings or parts thereof which are proposed to be enlarged, altered, repaired or changed in use or occupancy shall comply with the provisions of [the Building Code].”
Whether the defendants altered or changed the occupancy or use of the premises in 1979, and consequently whether the State Building Code is applicable, is disputed by the parties. This constitutes a triable issue, and therefore summary judgment is inappropriate.

B. Count I: Breach of the Implied Warranty of Habitability

The defendants contend that the plaintiffs cannot maintain an action for breach of the implied warranty of habitability on three grounds: (1) the plaintiff lacks standing because she did not have a lease with the defendants; (2) breach of the implied warranty of habitability does not give rise to a claim for strict liability; and (3) violations of the State Building and Sanitary Codes are not per se breaches of the implied warranty of habitability imposing strict liability.

1. A Non-tenant Can Maintain a Cause of Action for a Breach of the Implied Warranty of Habitability for Personal Injuries

The implied warranty of habitability “is concerned with the provision, maintenance, and repair of the physical facilities vital to the use of the leased premises.” McAllister v. Boston Housing Authority, 429 Mass. 302, 305 (1999). About three decades ago, the Court rejected the old common-law conception of the lease as a property transaction and embraced the view which recognizes that a lease is essentially a contract between the landlord and the tenant. Boston Housing Authority v. Hemingway, 363 Mass. 184, 198 (1973). In this contract, the landlord promises to deliver and maintain the demised premises in habitable condition and the tenant promises to pay rent for such habitable premises. Hemingway, 363 Mass, at 198. More specifically, through this implicit agreement, the landlord promises, with respect to minimum standards prescribed by laws and regulations such as the State Sanitary Code, “(i) that the rented unit complied with such standards at the time of the renting, and (ii) that he will do whatever such laws, regulations or Codes require a landlord to do for compliance with such standards during the terms of the renting.” Hemingway, 363 Mass, at 218. Liability for personal injuries, as well as economic compensation, is imposed upon landowners for breach of the warranty. See Crowell v. McCaffrey, 377 Mass. 443, 447 (1979).
The parties dispute whether the plaintiff, who is not the tenant and therefore not a party to the lease agreement with the defendants, can maintain a cause of action for personal injuries. The case law in this area is largely unsettled, there are presently no decisions specifically extending or denying to extend the warranty of habitability to guests of tenants injured on rental property. Four Superior Court decisions have split evenly on the issue. In Egenlauf v. Brown, Judge Sosman did not permit the plaintiff to amend the complaint to add a claim for breach of the implied warranty of habitability for injuries she suffered that resulted from the allegedly defective maintenance of the premises. 5 Mass. L. Rptr No. 3, 59 (Jan. 5, 1996). As reasons for the denial, Judge Sosman stated that the plaintiff did not have a cause of action due to the lack of lease or other contractual relationship with the defendant as reason for the denial. Egenlauf, 5 Mass. L. Rptr. No. 3, 59. Similarly, Judge Borenstein allowed a landlord’s motion to dismiss a non-tenant’s claim for breach of the warranty of habitability, thereby declining to extend liability for personal injuries to a tenant’s guest, reasoning that the warranty stems from the contract or lease between the landlord and tenant. Sullivan v. H.H. Gilbert Management Corp., 1997 LEXIS 131 (1997) (Mass.Super. May 16, 1997) (7 Mass. L. Rptr. 291).
In two recent cases the courts have permitted these claims under a breach of warranty theory. In 1994, Judge Toomey denied the defendant’s motion to dismiss the warranty claim and relied on Supreme Judicial Court cases which eliminated the common-law rule eradicating the distinction between licenses and invitees in connection with a landowner’s duty of care in negligence actions. Mitchell-Gionet v. Markowski, 1994 WL 878955, *2-4 (Mass.Super. Nov. 9, 1994). Relying heavily on Markowski, Judge Agnes permitted the plaintiff, who was a guest of the tenant’s, to pursue a claim for injuries allegedly resulting from a fall on the exterior steps of an apartment under a theory of breach of warranty of habitability. Ruiz v. Pelson Realty Trust, 2001 WL 810347, *2-4 (Mass.Super. April 9, 2004) (13 Mass. L. Rptr. 346).
Until the appellate courts formally address the issue, there is uncertainty surrounding the fate of these cases..Consequently, if this court were to allow the defendants’ motion for partial summary judgment, there is a substantial chance the plaintiff would prevail on appeal since the trend appears to be moving in favor of permitting non-tenants’ causes of actions for personal injuries against landlords under breach of warranty of habitability theory. Once again, this court will defer its decision on the defendants’ motion for partial summary judgment.
2. Liability Is Imposed for a Breach of the Implied Warranty of Habitability Without Consideration of Fault on the Part of the Landlord
The defendants erroneously argue that breach of the implied warranty of habitability does not impose strict liability claims for personal injury. The warranty of habitability is derived from a contract theory which does not incorporate a fault element which amounts to strict liability. See Berman & Sons, 379 Mass, at 200 (“Considerations of fault do not belong in an analysis of warranty”). It is designed not to penalize *721 the landlord for misbehavior, but rather to provide a dwelling suitable for habitation. The essential objective of the warranty is to make sure that the tenant receives what he is paying for. The landlord may not avoid his duty with mere reasonable efforts to provide a habitable dwelling as the tenant may not excuse his obligation with reasonable efforts to pay rent.

3. Violations of the State Building Code Do Not Amount to a Per Se Breach, However Whether the State of the Staircase on the Premises Constituted a Breach of the Implied Warranty of Habitability Is a Question of Fact

The defendants correctly contend that violations of the State Building Code are not per se breaches of the implied warranty of habitability. A breach of warranty of habitability is defined as “defects in facilities vital to the use of the premises for residential purposes.” Berman, 379 Mass, at 202. In the rental of a dwelling unit, a landlord implicitly promises that the rental unit complies with the minimum standards prescribed by the State Building and Sanitary Codes and that he will do whatever those Codes require for compliance during the term of the renting. Crowell, 377 Mass, at 451.
However, not every violation of the State Sanitary Code results in a breach of warranty. McAllister, 429 Mass, at 205. “The State Sanitary Code’s minimum standards of fitness for human habitation and any relevant local health regulations provide the trial court with the threshold requirements that all housing must meet. Proof of any violation of these regulations would usually constitute compelling evidence that the apartment was not in habitable condition. However, the protection afforded by the implied warranty of habitability does not necessarily coincide with the Code’s requirements. There may be instances where conditions not covered by the Code regulations render the apartment uninhabitable ... On the other hand, there may be instances of isolated Code violations which may not warrant a decision that the premises are uninhabitable.” Hemingway, 363 Mass, at 200-01. Whether the condition of the staircase and/or particular State Building Code violations make the premises “uninhabitable” and constitute a breach is a question for the jury, and the defendants are not entitled to judgment as a matter of law. Id. (“The existence of a material breach of the warranty is a question of fact to be determined by circumstances of each case”).

ORDER

For the foregoing prudential reasons, the court’s ruling on the defendants’ motion for partial summary judgment on Counts I and II is DEFERRED until after the jury has returned a verdict.