Burnes, Nonnie S., J.
On November 11,2004, Plaintiff Ian Bayliss (“Bayliss”) brought this action against Hannan Construction Corp. (“Hannan”) and Richard Harding (“Harding”), seeking damages for personal injuries he sustained while working on construction for a new house for Harding. Harding now moves for summary judgment under Mass.R.Civ.P. 56(b). For the reasons discussed below, Harding’s motion for summary judgment is GRANTED.

BACKGROUND

At this summary judgment stage, the facts are reported in the light most favorable to the non-moving party, Bayliss. Anderson Street Associates v. City of Boston, 442 Mass. 812, 816 (2004). Harding, a retiree with no experience in any construction trade or real estate development, contacted Deck House to inquire into the construction of a new home on his property. Deck House is engaged in the business of designing and selling “kit homes,” which are unassembled, prefabricated homes. Deck House sells only the design plans and prefabricated parts for the home; buyers must contract separately with an independent general contractor for the home’s construction. On June 4, 2001, Harding entered into a contract with Deck House for the sale of a kit home and retained Hannan Construction on June 8, 2001 to serve as the general contractor.
When construction commenced, Harding frequented the construction site. On a few occasions, Harding directed Hannan to deviate from the original plans that Deck House provided. For example, Hannan requested that the master bathroom be enlarged, a chimney and fireplace be added, the HVAC system be substituted with another system Harding preferred, and the front deck be constructed with different material. Furthermore, Harding personally fired the original HVAC and masonry subcontractors that Hannan had hired, and then hired the landscaper who built the fireplace he requested.
Bayliss claims that while he was working on the job, the only entrance to the front of the house was through the front door. This door was elevated roughly 3 1/2’ - 4’ in height from the ground, but the stairs leading up to it had not yet been built. Instead, to enter the door, Bayliss claims that a wooden pallet was placed on the ground and leaned at an angle against the house, for use as a makeshift ladder. On January 16, 2003, Bayliss claims that when he was exiting the house through the front door, he jumped down without using the pallet. Upon landing, he severely twisted his knee and suffered permanent injuries.

DISCUSSION

A. Summary Judgment Standard

Harding moves for summary judgment against Bayliss, claiming that he did not owe Bayliss a duty of care. Summary judgment shall be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as amatter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the parly opposing the motion must respond with evidence of specific facts, establishing the existence of a genuine dispute. Pederson, 404 Mass. at 17. An adverse party may not defeat a motion for summary judgment by resting merely on the allegations and denials of its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories, or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e). When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, drawing all permissible inferences in his or her favor. Douillard v. IMR, Inc., 433 Mass. 162, 163 (2001).
“To prevail on a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duly of reasonable care, that the defendant breached this *190 duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage.” Jupin v. Kask, 447 Mass. 141, 146 (2006) (citation omitted). The Supreme Judicial Court “generally consider(s) the latter three questions — whether a defendant exercised reasonable care, the extent of the damage caused, and whether the defendant’s breach and the damage were causally related — to be the special province of the juiy.” Id., (citation omitted). “However, this existence or nonexistence of a duty is a question of law, and is this an appropriate subject of summary judgment.” Id. citing Remy v. MacDonald, 440 Mass. 675, 677 (2004) (“If no such duty exists, a claim of negligence cannot be brought”).
In this case, Bayliss claims that by allowing the back deck to remain without stairs, Harding breached his duty of care to him. In support of his motion for summary judgment, Harding argues that he owed no duty of care to Bayliss. Bayliss responds that Harding owed him a duty of care under two separate theories: “retained control” liability and “landowner” liability.

B. “Retained Control” Liability

Bayliss argues that because Harding “retained control” over the construction of his home, he can be subjected to liability for injuries caused by his failure to exercise such control with reasonable care. The general rule is that an “employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.” Santella v. Whynott, 27 Mass.App.Ct. 451, 453 (1989). However,
[o]ne who entrusts work to an independent contractor, but who retains the control of any part of this work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
Cheschi v. Boston Edison Co., 39 Mass.App.Ct. 133, 137 (1995), quoting Restatement (Second) of Torts, §414. See Corsetti v. Stone Co., 396 Mass. 1, 9-10 (1985).
In order for . . . [this rule] to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.
Restatement (Second) of Torts §414 comment c (1965) (emphasis added). See DiLaveris v. W.T. Rich Co., Inc., 424 Mass. 9, 11 (1986) (the critical factor is whether the employer had any “meaningful control, however minimal” over the independent contractor).
“If the employer retains no control over the manner in which the work is to be done, ‘it is to be regarded as the contractor’s own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it.” Corsetti, 396 Mass. at 10, quoting Restatement (Second) of Torts §409 comment b (1965).
Th[is] rule ... is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors’ work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself.
Restatement (Second) of Torts §414 comment b (1965); see Cheschi v. Boston Edison Co., 39 Mass.App.Ct. 133, 137-38(1995) (court applied §414 against Boston Edison Co., the owner of the construction site, not the principal contractor).
Usually, “[wjhether an employer has sufficient control over part of the work of an independent contractor to render him liable under §414 is a question of fact for the jury.” Corsetti, 396 Mass. at 11 (citations omitted). However, “(ajlthough control in cases involving §414 is ordinarily a factual issue to be resolved by the jury, summary judgment is proper when . . . the plaintiff fails to provide evidence creating a genuine issue for trial.” McNamara v. Massachusetts Port Authority, 30 Mass.App.Ct. 716, 718 n.3 (1991).
Here, Article 14 of the Hannan-Harding contract provides, ‘The Contractor shall adequately protect the Work, adjacent properly and the public and shall be responsible for any damage or injury due to his act or neglect.” Thus, Hannan was slated to have control over the project.
Bayliss, however, presented evidence that after construction on the home commenced, Harding became “increasingly involved” in the process. For example, Harding fired the HVAC and masonry subcontractors, hired the landscaper to build the fireplace, and ordered several changes be made to the original plans. Bayliss argues that these facts demonstrate Harding’s retained control over the manner in which the work was conducted, thus giving rise to a duly of care.
These facts fail to demonstrate, however, how Harding, who had no experience in construction, retained any control “over the manner in which the work [was] done.” Restatement (Second) ofTorts §414 comment c (1965). It is undisputed that Harding never directed *191 any of the subcontractors on how to carry out their work, although Harding was frequently at the works-ite. Section 414 specifically states that an owner is specifically entitled “to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.” These were the type of actions Harding undertook, even where he went so far as to hire and fire the subcontractors. Once hired, the subcontractors were free to carry out their work as they saw fit. Because Bayliss failed to demonstrate that Harding retained control over the construction, Harding owed no duty of reasonable care to Bayliss.
C. “Landowner’s” Liability
Bayliss also argues that because he was lawfully on Harding’s property when he was injured, Harding as the landowner owed him a duty of reasonable care. It is well settled under Massachusetts law that “[t]he duty and standard of care owed by the property owner to the employee of an independent contractor [is] the same as that owed all other lawful visitors on the premises.” Poirier v. Plymouth, 374 Mass. 206, 208 (1978). This duty includes an obligation to maintain the premises in a reasonably safe condition and to warn of dangers of which it was aware or reasonably should have been aware. Polak v. Whitney, 21 Mass.App. 349, 351 (1985). The question is what duty of care a landowner owes an employee of an independent contractor where a dangerous condition arises as a result of the independent contractor’s work, as opposed to a dangerous condition present on the landowner’s property when the independent contractor entered.
Jurisdictions other than Massachusetts have addressed this issue squarely and have determined that a landowner owes no duty where an independent contractor or his employees created the dangerous condition complained of. See Hood v. Hess Oil Virgin Islands Corp., 650 F.Sup. 678, 682 (V.I. 1986) (court granted landowner’s motion for summaiy judgment where the work of the independent contractor created the dangerous condition which caused the employee’s injuiy and there was no evidence to contradict the independent contractor’s control over the project); Moore v. Noble Drilling Co., 637 F.Sup. 97, 100 (E.D.Tex. 1986) (under Texas law, “where a dangerous condition is transitoiy and arises out of the performance of the work, the owner/employer of the independent contractor generally is not under a duty to see that it is done safely”); Holdaway v. Gustanson, 546 F.Sup. 231, 233 (D.Wyo. 1982) (under Wyoming law, “the owner had no duty to protect the employees of an independent contractor from the dangers which are incidental or part of the work the independent contractor was hired to perform”). See also J.D. Lee & Barry A. Lindahl, 4 Modem Tort Law: Liability and Litigation §39:40 (2d. ed. 1990) (“There are two different situations involving the owner’s duty to the independent contractor and its employees. With respect to defects existing on the premises when the independent contractor entered, the premises owner has a duty to inspect and warn the independent contractor of dangerous conditions that are not open and obvious and that the owner knows or should know exist. When the dangerous condition arises as a result of the independent contractor’s work, the premises owner normally owes no duty to the independent contractor’s employees because an owner generally has no duty to ensure that the independent contractor performs its work in a safe manner. However, the premises owner may be liable when the owner retains the right of supervisory control over work on the premises”).
In Santos v. Bettencourt, 40 Mass.App.Ct. 90 (1996), the plaintiff, an employee of an independent contractor hired to install a new roof for the defendant landowner, injured himself after a scaffold that his employer erected collapsed. Id. at 90. The plaintiff sued the landowner directly, arguing that he negligently allowed an unsafe and dangerous scaffold to remain on his property. Id. at 91.
The trial court granted summary judgment in favor of the landowner, holding that because the plaintiff failed to demonstrate the landowner retained sufficient “control” over the construction site, he owed no duty of care to the plaintiff. Id. On appeal, rather than arguing the owner did retain sufficient control over the site, the plaintiff argued simply that the owner breached his common-law duty as a landowner to warn of known or easily discoverable dangers on his property. Id. at 94 n.4. In part, the court held that summaiy judgment was properly granted because the plaintiff provided no evidence that the owner knew or should have known of the dangerous condition. Id. at 91. The case turned principally, however, on whether the owner was liable under G.L.c. 143, §51 and so offers little insight into whether liability can attach to a landowner for dangerous conditions created by an independent contractor, if it can be proven that the owner knew or should have known of the condition.
In Farren v. General Motors Corp., 708 F.Sup. 436 (D.Mass. 1989), a diversity jurisdiction case applying Massachusetts law, the plaintiff, an employee of an independent contractor hired to renovate General Motors’s assembly plant, sued General Motors after falling through an opening in a catwalk at the plant. He alleged that General Motors owed him a duty of care under two theories — first “landowner” liability and second under “retained control” liability. Id. at 443.
Regarding General Motors’ liability as a landowner, the court cited the out-of-state cases mentioned above, and recognized that in those jurisdictions, “the duty [of a landowner] does not extend to situations where the defective conditions were created by the work of the independent contractor and his employ *192 ees.” Id. at 444. The court nonetheless denied General Motors’ motion for summary judgment, because the plaintiff presented sufficient evidence that: 1) General Motors knew or should have known of the allegedly dangerous condition at the time of the accident and 2) General Motors was somehow responsible for creating the condition. Id. at 445. Afterwards, the court separately analyzed the plaintiffs claim under the “retained control” theory, and also concluded that General Motors owed a duty of care under this theory because it retained sufficient control over the site. Id. at 446.
Forren highlights the lack of Massachusetts case law on the issue of whether the landowner’s duty extends to situations where an independent contractor and his employees created the defective condition causing the injury, by its reliance on out-of-state authority. Furthermore, it indicates that to be liable for dangerous conditions created by an independent contractor, the landowner must be more than simply aware of the condition — i.e. evidence that the owner contributed to the condition. Id. at 445.
Here, Bayliss presented sufficient evidence that Harding was aware of the condition of the back door and its lack of stairs. It is undisputed that Harding visited, the house quite frequently. Furthermore, Bayliss claims he saw Harding himself climb the up pallet to gain entry to the house, when giving his friends a tour (although Harding disputes this fact).
Nevertheless, Bayliss presented absolutely no evidence that Harding, in any way, contributed to the creation of this condition; instead the evidence presented indicates, that some employee hired to complete the construction created it. Thus, Harding had no duty as a landowner to protect Bayliss from this condition.
Because Bayliss failed to present evidence that Harding “retained control” over the construction of his home and because Bayliss failed to demonstrate that Harding, as a landowner, contributed to the creation of the condition for which Bayliss complains, Harding owed no duty of care to Bayliss. As a result, summaiy judgment will be granted to Harding.[3]

ORDER

For the above-mentioned reasons, it is hereby ORDERED that Richard Harding’s motion for summaiy judgment is GRANTED.

Even if Harding could be subjected to liability as a landowner under these circumstances, “a landowner’s duty to protect lawful visitors against dangerous conditions on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence.” O'Sullivan v. Shaw, 431 Mass. 201, 204 (2000), citing Lyon v. Morphew, 424 Mass. 828, 833-34 (1997) (hospital’s director and assistant director of engineering not individually liable for failing to replace a safety railing that had been removed from hospital’s roof where they had no statutory or common-law duty to replace the railing and where the dangers of working on a roof are obvious to persons of ordinaiy intelligence). The danger in jumping from a doorway without stairs is obvious to a person of average intelligence; Harding had no duty to protect against such danger.