## KATHLEEN B. PELLEGRINO *vs.* SPRINGFIELD PARKING AUTHORITY.

No. 06-P-432.

Hampden. March 9, 2007. - May 17, 2007.

Present: COHEN, MILLS, & KATZMANN, JJ.

*Public Employment,* Retirement benefits, Termination. *Pension. Retirement. Contract,* Employment, Illegality.

In circumstances where a public employee who had entered into two parallel contracts for the same public job, one with a city and one with a quasi public agency, with the goal of remaining in the State pension system while, at the same time, becoming an employee of the agency, which was technically separate from the city, retired from her position with the city but still collected a full salary from the agency, G. L. c. 32, § 91, which states that individuals collecting benefits via a State or local retirement program generally may not be paid for services rendered to the State or locality, applied, despite the fact that the agency's employees did not participate in the State pension system, where the agency's enabling act had been amended clearly and exclusively to exclude G. L. c. 32 from the list of statutes to which the agency's employees were not subject, and where the employee was clearly rendering a service to the city while working for the agency [97-99]; thus, the employee's concurrent employment with the agency and collection of pension benefits violated G. L. c. 32, § 91(*a*), and did not come within a limited exception articulated in G. L. c. 32, § 91(*b*) [99-101].

CIVIL ACTION commenced in the Superior Court Department on January 28, 2003.

The case was heard by *Peter A. Velis,* J., on motions for summary judgment.

*Raipher D. Pellegrino* for the plaintiff.

*Daniel J. Finnegan* for the defendant.

MILLS, J. Kathleen Pellegrino entered into two parallel contracts for the same public job. Her goal (and the apparent goal of the other governmental participants and signatories) was for her to remain in the State pension system and, at the same

time, become an employee, at full salary, for the Springfield Parking Authority (SPA), a quasi public agency that is technically separate from the city of Springfield (city), and where employees are not pension participants. In brief, the parties attempted to provide pension benefits for a public employee whose job excluded such benefits, hence, to circumvent the statutory system. After the SPA declared Pellegrino's employment contract void as violative of G. L. c. 32, § 91, and terminated her, Pellegrino challenged that termination in Superior Court. In this appeal, we hold that the judge was correct in ruling that Pellegrino's continued performance under her employment contract after "retiring" from the city and beginning to collect retirement benefits violated G. L. c. 32, § 91, and that the grant of summary judgment for the defendant SPA was therefore proper.

*Factual and procedural background.* Pellegrino was employed by Westfield State College from 1978 until late June of 1998. During the course of that employment, she participated in the Commonwealth's public employee retirement system. In 1998, Springfield Mayor Michael Albano offered Pellegrino the position of executive director of the SPA. The SPA is a "public instrumentality" that performs an "essential government function," St. 1981, c. 674, § 3, namely ensuring "the free circulation of traffic of all kinds through the streets of the city of Springfield . . . for the health, safety and welfare of the general public." St. 1981, c. 674, § 1. Pellegrino informed the mayor that she would not accept the position unless she could continue participating in the Commonwealth's public employee retirement system. The mayor told Pellegrino that he could satisfy her request by structuring an arrangement so that, for purposes of pension benefits, she worked for the city, with the funds for her SPA salary coming from the SPA. Pellegrino accepted the position.

On August 17, 2001, Pellegrino entered into two virtually identical personal services contracts, one of which was between her, the city, and the SPA (the city-SPA contract), and the other between only her and the SPA (the SPA contract). Pursuant to the city-SPA contract, it appears to have been intended that Pellegrino be an employee of the city, which paid her salary, while

the SPA was required to "reimburse" the city for the full amount of this salary. A principal goal of the arrangement was to entitle Pellegrino to participate in the city retirement program. Under both contracts, the duties required of Pellegrino were the same, and each provided for an annual salary of $91,375. The SPA contract provided that "should the [city-SPA contract] terminate or be held invalid for any reason, or should [Pellegrino] retire from the City then [the SPA contract] shall survive unless otherwise terminated by the [SPA] and [Pellegrino] as provided for herein and [the SPA contract] shall operate independent of the [city-SPA contract]." Both contracts contained identical "Compliance with Laws" provisions stating that "[i]n the performance of this Agreement, [Pellegrino] shall comply with all applicable rules and regulations promulgated by all federal, state and local laws and ordinances, as well as all applicable rules, regulations, and licensing requirements, promulgated by all local, state, federal and national boards, bureaus, associates and agencies."

After the city announced an early retirement incentive program for its employees, Pellegrino asserted her status as a city employee. While continuing to provide the identical services to the SPA, she took early retirement from the city and proceeded to collect city employee retirement benefits as governed by G. L. c. 32, in the amount of $54,588 annually. At the same time, she collected her SPA salary directly from the SPA at the full rate previously paid, such that, after "retirement," Pellegrino's pay increased to approximately $145,963 per year.

On November 14, 2002, the retirement board of Springfield sent a letter to Pellegrino stating that G. L. c. 32, § 91(b) and (c), applied to her continued employment with the SPA. On January 21, 2003, the SPA board of directors voted to void Pellegrino's contract because the contract's compensation clause violated State retirement laws.

Pellegrino then filed suit against the SPA and its board of directors on January 28, 2003, alleging breach of contract, promissory estoppel, unjust enrichment, intentional infliction of emotional distress, and negligent infliction of emotional distress. The complaint as to the individual defendants, and the emotional

distress counts as to all defendants, were later dismissed by agreement of the parties. After a hearing on cross motions for summary judgment, the judge denied Pellegrino's motion for summary judgment and granted summary judgment for the defendant, ruling that the SPA contract was illegal and thus unenforceable given the applicability of G. L. c. 32, § 91.

*Discussion.* On appeal, Pellegrino argues that, because the SPA is an independent authority whose employees are not part of the public retirement system, the entity and individuals employed by it are not subject to the mandates of G. L. c. 32, § 91. She further asserts that after retiring from the city, "she was no longer rendering services to the city or the Commonwealth," thus providing additional support for her assertion that G. L. c. 32, § 91, is inapplicable to her. We must determine whether the statute applies to the facts pertaining here, and, if it does, whether Pellegrino's continued performance under the contract while receiving retirement benefits constituted a violation of the statute. If a violation existed, the judge's grant of summary judgment for the defendant was proper.

a. *Standard of review.* We review a grant of summary judgment de novo, *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997), viewing the evidence in the light most favorable to the nonmoving party. *Gray* v. *Giroux*, 49 Mass. App. Ct. 436, 438 (2000). To prevail, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as matter of law. *Opara* v. *Massachusetts Mut. Life Ins. Co.*, 441 Mass. 539, 544 (2004). See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

b. *Applicability of G. L. c. 32, § 91.* Pursuant to G. L. c. 32, § 91, individuals collecting benefits via a State or local retirement program may generally not be paid for services rendered to the State or locality.[1] Notwithstanding this general prohibition, an individual "appointed for a term of years to a position . . . by the mayor . . . shall be paid the compensation attached

---

[1] In relevant part, G. L. c. 32, § 91(*a*), as amended through St. 1996, c. 450, § 91, states: "No person while receiving a pension, disability pension or retirement allowance from the commonwealth, or from any county, city, town or district, shall, after the date of his retirement be paid for any service rendered to the commonwealth or any county, city, town or district . . . ."

to such position; provided, that he files with the treasurer of the governmental unit paying such pension or allowance, a written statement wherein he waives and renounces . . . his right to receive the same for the period during which such compensation is payable." G. L. c. 32, § 91(a), inserted by St. 1968, c. 676. Additionally, the general prohibition contained in G. L. c. 32, § 91(a), is inapplicable when one is "employed in the service of the commonwealth, county, city, town, district or authority for not more than nine hundred and sixty hours in the aggregate, in any calendar year," and the combined total of earnings from that employment and the pension or retirement allowance collected "do[es] not exceed the salary that is being paid for the position from which he was retired . . . ." G. L. c. 32, § 91(b), as amended through St. 1994, c. 367, § 1.

Pellegrino argues that the judge erred in holding that SPA employees are subject to the restrictions contained in G. L. c. 32, § 91, because such employees do not participate in the pension system and because G. L. c. 32, § 91, does not list the SPA as one of the entities to which it applies. We disagree.

Pursuant to its enabling act, the SPA is "a body politic and corporate and political subdivision of the commonwealth." St. 1981, c. 674, § 3. As a "public instrumentality, . . . the exercise by the [SPA] of the powers conferred by this act in the construction, operation and maintenance of the garages shall be deemed and held to be the performance of an essential governmental function." Ibid. Indeed, the SPA's provision of "parking facilities is a public necessity." St. 1981, c. 674, § 1. The SPA is "managed, controlled and governed" by five individuals appointed by the mayor, and whose compensation is determined by the city council. St. 1981, c. 674, § 3. However, the entity is not "subject to the supervision and regulation of any department, commission, board, authority, bureau or agency of the commonwealth except to the extent and in the manner provided in [the enabling] act." Ibid. The SPA is self-funding, primarily from parking fees.

The SPA's original enabling act specifically provided that no "employee of the [SPA] shall be deemed to be an official or employee of the city, the commonwealth or of any political subdivision thereof nor shall the appointment or employment of

any such . . . employee . . . be subject to chapter . . . thirty-two . . . of the General Laws." St. 1981, c. 674, § 20. However, in 1985, this provision was amended by omitting the reference to G. L. c. 32 therein. St. 1985, c. 178, § 16.[2] Because the alteration to St. 1981, c. 674, § 20, provided by St. 1985, c. 178, § 16, served clearly and exclusively to exclude G. L. c. 32 from the list of statutes to which SPA employees are not subject, the judge was correct in concluding that SPA employees are now subject to the mandates of G. L. c. 32, including G. L. c. 32, § 91.

Further support for the application of G. L. c. 32, § 91, to Pellegrino's employment is contained in the text of the statute itself. As noted *supra*, § 91(*a*) generally prohibits anyone who is receiving a city or State pension not only from being employed by the city, but also from being "paid for any *service rendered*" thereto (emphasis supplied). In her capacity as executive director of the SPA, Pellegrino was clearly rendering a service to the city, and her assertion that the "motion judge confuse[d] the services [she] provided to the City with the services she provided to the SPA after she retired" is simply inaccurate. Prior to "retirement," her work was performed at least nominally as a city employee under the city-SPA contract, and the work she undertook pursuant to the SPA contract after "retiring" was identical to that performed previously. Our above discussion of the SPA, including the fact that the SPA is a "public instrumentality" providing "an essential government function" in order to satisfy a "public necessity," St. 1981 c. 674, §§ 1, 3, further indicates that Pellegrino's work for the SPA was indeed a service to the city.

c. *Violation of G. L. c. 32, § 91.* As the preceding discussion suggests, in "retiring" from the city, collecting retirement benefits therefrom, and continuing to earn over $90,000 per

---

[2]"Section 20 of said chapter 674 is hereby amended by striking out the second sentence and inserting in place thereof the following sentence: — No member or employee of the [SPA] shall be deemed to be an official or employee of the city, the commonwealth or of any political subdivision thereof, other than the [SPA], nor shall the appointment or employment of any member or employee of the [SPA] be subject to chapter thirty-one, thirty-two A or thirty-two B of the General Laws as they may now or hereafter be amended."

year in salary from the SPA, Pellegrino violated G. L. c. 32, § 91(*a*). Nonetheless, Pellegrino argues that her performance under the SPA contract was not illegal because G. L. c. 32, § 91(*b*), allows her to accept limited postretirement governmental employment. Thus, she asserts, because she conceivably could perform legally under the SPA contract, the contract was enforceable. See and compare *Nussenbaum* v. *Chambers & Chambers Inc.*, 322 Mass. 419, 421-422 (1948). This argument is unavailing. The SPA contract specifies that it encompasses a five-year term, contemplates full-time performance, and makes no allowance for pension-induced absences. Moreover, because Pellegrino's annual salary under the SPA contract was exactly the same as it was under the city contract, any amount she received as a pension payout would cause her combined earnings to exceed the amount she would have received had she not retired, thus placing her outside the parameters of the exception articulated in G. L. c. 32, § 91(*b*).[3]

Our determination that Pellegrino's concurrent employment with the SPA and collection of pension benefits were violative of G. L. c. 32, § 91, is further supported by the general policies underlying the public pension system and the statute. "Publicly administered and financed pension benefits are intended to support those who are retired from public service," *Flanagan* v. *Contributory Retirement Appeal Bd.*, 51 Mass. App. Ct. 862, 868 (2001), and given the nature of her work for the SPA, Pellegrino could not fairly be so categorized. Further, G. L. c. 32, § 91, "reflects a clear policy that an employee of a governmental unit in Massachusetts generally may not retire, receive a pension, accept employment elsewhere in the government, and, by combining her pension and her new compensation, make more money than if she had not retired." *Bristol County Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 65 Mass. App. Ct. 443, 447 (2006). Pellegrino's employment by the SPA and simultaneous collection of pension benefits resulted in her receipt of annual compensation totaling over $145,000, over

---

[3]As stated *supra*, the limited exception contained in G. L. c. 32, § 91(*b*), applies only when the individual works "for not more than nine hundred and sixty hours in the aggregate, in any calendar year," and the sum of those earnings and the pension collected does "*not exceed the salary that is being paid for the position from which he was retired*" (emphasis supplied).

$54,000 more than she would have received had she not "retired."

We will not enforce an illegal contract, see *Arcidi* v. *National Assn. of Government Employees, Inc.*, 447 Mass. 616, 619-620 (2006); *Tocci* v. *Lembo*, 325 Mass. 707, 709-710 (1950), nor will we "reward illegal performance . . . even where the contract itself does not call for illegal performance." *Yankee Microwave, Inc.* v. *Petricca Communications Sys., Inc.*, 53 Mass. App. Ct. 497, 509 (2002). Similarly, "estoppel cannot rest on an illegal contract," *Beacon Hill Civic Assn.* v. *Ristorante Toscano, Inc.*, 422 Mass. 318, 324 (1996), quoting from *New York, N.H. & H.R.R.* v. *York & Whitney Co.*, 215 Mass. 36, 40 (1913). Because Pellegrino's continued performance under the SPA contract was illegal as matter of law given her concurrent receipt of retirement benefits, the judge properly denied her motion for summary judgment and allowed the defendant's cross motion for summary judgment.

*Judgment affirmed.*