WILLIAM SHEEHAN *vs.* DAVID B. WEAVER & another.[1]

Essex. December 2, 2013. - April 10, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*State Building Code. Building. Strict Liability. Statute,* Construction.

This court overruled its holding in *McAllister* v. *Boston Hous. Auth.*, 429
   Mass. 300, 304 n.5 (1999), and concluded that G. L. c. 143, § 51, applies
   to all violations of the State building code. [737-741]
In a civil action brought against the owner and manager of a mixed-use
   business-residential structure (defendants), arising from injuries that the
   plaintiff sustained when the guardrail of an exterior staircase leading to the
   apartment in the structure that the plaintiff had rented from the defendants
   broke, the judge erred in denying the defendants' motion for judgment
   notwithstanding the verdict in favor of the plaintiff, where the structure
   was not a "building" within the meaning of G. L. c. 143, § 51, which
   imposes strict liability on the owner, lessee, mortgagee in possession or oc-
   cupant of a "place of assembly, theatre, special hall, public hall, factory,
   workshop, manufacturing establishment or building," in that the residential
   portion of the structure was not used as a place for a large number of
   people to gather. [741-745]

CIVIL ACTION commenced in the Northeast Division of the
Housing Court Department on July 14, 2008.

The case was tried before *David D. Kerman*, J., and a motion
for judgment notwithstanding the verdict or for a new trial was
heard by him.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Peter C. Kober* for the defendants.

*Louis J. Muggeo* (*Stephen M. Zolotas* with him) for the
plaintiff.

The following submitted briefs for amici curiae:

*John F. Brosnan* for Massachusetts Defense Lawyers
Association.

---

[1]Jean C. Weaver.

*J. Michael Conley, Thomas R. Murphy, & Jeffrey Petrucelly* for Massachusetts Academy of Trial Attorneys.

*Carol A. Kelly* for Property Casualty Insurers Association of America.

*Martin J. Rooney* for Boston Housing Authority.

DUFFLY, J. After spending an evening drinking with a friend, the plaintiff, William Sheehan, returned to his apartment on Rantoul Street in Beverly, which he rented from the defendants, Jean C. Weaver and David B. Weaver, the owner and manager of the property, respectively. Sheehan ascended an exterior staircase leading to an outer door on the second floor landing, where he leaned against the staircase guardrail. The guardrail broke, and Sheehan fell to the pavement below, suffering serious injuries as a result. Sheehan filed a complaint against the Weavers in the Housing Court. A jury found both parties negligent and apportioned to Sheehan forty per cent of the comparative negligence. The jury found also that, pursuant to G. L. c. 143, § 51 (§ 51), the Weavers were strictly liable for Sheehan's injuries because they were caused by various violations of the State building code. Section 51 imposes strict liability on an owner, or other party, in control of "a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building" for damages caused by a violation of "the provisions of [G. L. c. 143] and the state building code." The Weavers filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial, arguing in part that § 51 did not apply in the circumstances. This motion was denied, and the Weavers appealed. We transferred the case to this court on our own motion. The Weavers do not challenge the verdict of negligence but argue that the judge erred in permitting Sheehan's claim under § 51.[2]

This case once again presents questions regarding the scope and meaning of § 51, which have confronted our courts since the statute was enacted in its current form in 1972. See St. 1972, c. 802, § 35. The issues we address in this appeal are, first, whether § 51 applies to all State building code violations

---

[2]We acknowledge the amicus briefs of the Massachusetts Academy of Trial Attorneys, the Boston Housing Authority, the Massachusetts Defense Lawyers Association, and the Property Casualty Insurers Association of America.

or, as stated in *McAllister* v. *Boston Hous. Auth.*, 429 Mass. 300, 304 n.5 (1999) (*McAllister*), only those concerning fire safety; and second, whether the property involved in this case qualifies as a "building" within the meaning of the statute. Overruling our holding in *McAllister, supra*, we conclude that § 51 applies to all violations of the State building code. We conclude also that "building" as used in the statute is a narrowly defined term that does not encompass within its ambit of strict liability a small-scale residential structure like that occupied by Sheehan, notwithstanding that the structure had some commercial characteristics. Therefore, so much of the order denying the motion for judgment notwithstanding the verdict as relates to the § 51 claim must be reversed.

*Background.* We recite the evidence "in the light most favorable to the nonmoving party." *Situation Mgt. Sys., Inc.* v. *Malouf, Inc.*, 430 Mass. 875, 876 (2000). Sheehan resided alone in the third-floor apartment of a three-story mixed-use business-residential structure on Rantoul Street (Rantoul structure). In addition to his apartment, there were two residential apartments on the second floor, one in the front and one in the back, each occupied by a single tenant, and a chiropractor's office occupied the first floor. Other than the fire escape, the only access to Sheehan's apartment was by way of the exterior wooden staircase on the side of the Rantoul structure. The staircase led to a landing in front of an exterior door located on the second floor. That door opened into a foyer shared by Sheehan and the resident of the second-floor front apartment. The staircase did not serve the second-floor rear apartment, which had a separate entrance, or the chiropractor's office. Only Sheehan and the resident of the second-floor front apartment, and their guests, used the staircase.[3] The Weavers never resided in the Rantoul structure.

At the time of Sheehan's fall, the sixth edition of the State building code was in effect. As Sheehan's expert testified, the Rantoul structure had eighteen building code violations, including defects in the strength, height, and condition of the guardrail. See, e.g., 780 Code Mass. Regs. §§ 1014.9.1, 1022.2.2,

---

[3]Sheehan contends that the chiropractor's office would use the staircase to access its mail, but the record makes clear that this was not the case.

1028.2 (1997). The jury determined that these violations caused Sheehan's injuries.

*Discussion.* Because this case involves questions of statutory interpretation, our review is de novo. See *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Morrison,* 456 Mass. 463, 467 (2010).

"Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.' " *Water Dep't of Fairhaven* v. *Department of Envtl. Protection,* 455 Mass. 740, 744 (2010), quoting *International Org. of Masters, Mates & Pilots Atl. & Gulf Maritime Region, AFL-CIO* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.,* 392 Mass. 811, 813 (1984). "We begin with the language of the statute itself and 'presume, as we must, that the Legislature intended what the words of the statute say.' " *Commonwealth* v. *Young,* 453 Mass. 707, 713 (2009), quoting *Collatos* v. *Boston Retirement Bd.,* 396 Mass. 684, 687 (1986). "In construing the Legislature's intent, we may also enlist the aid of other reliable guideposts, such as the statute's 'progression through the legislative body, the history of the times, prior legislation, contemporary customs and conditions and the system of positive law of which they are part.' " *Suffolk Constr. Co.* v. *Division of Capital Asset Mgt.,* 449 Mass. 444, 454 (2007), quoting *EMC Corp.* v. *Commissioner of Revenue,* 433 Mass. 568, 570 (2001).

a. *Scope of building code violations.* In relevant part, § 51 in its current form provides:

> "The owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any of said provisions."[4]

---

[4]General Laws c. 143, § 51 (§ 51), includes a requirement that notice be given before an individual may be criminally prosecuted for the violations mentioned in the first sentence:

> "No criminal prosecution for such violation shall be begun until the lapse of thirty days after such party in control has been notified in writ-

Prior to 1972, § 51 imposed strict liability for violations of "sections twenty-one, twenty-four to twenty-eight, inclusive, and thirty," St. 1945, c. 510,[5] which concerned various fire safety issues. See St. 1913, c. 655, §§ 20-25, 27, as amended prior to 1972. Based on this language, in our decisions interpreting the pre-1972 version of § 51, we stated that "none of the benefits of G. L. c. 143, §§ 21 and 51, is available to persons using stairways and egresses for purposes other than escape from danger from fire."[6] *Festa* v. *Piemonte*, 349 Mass. 761, 761 (1965). See *Repucci* v. *Exchange Realty Co.*, 321 Mass. 571, 575 (1947), citing *Stevens, landowner*, 228 Mass. 368, 373, 374 (1917) ("The statute was designed for the protection of human life against fire").

In 1972, as part its enactment of a comprehensive State building code, the Legislature repealed the then-existing version of § 51, as well as the sections referenced therein, and replaced it with the current version.[7] St. 1972, c. 802, §§ 28, 35. The

ing by a local inspector as to what changes are necessary to meet the requirements of such provisions, or if such changes shall have been made in accordance with such notice. Notice to one member of a firm or to the clerk or treasurer of a corporation or to the person in charge of the building or part thereof shall be sufficient notice hereunder to all members of any firm or corporation owning, leasing or controlling the building or any part thereof. Such notice may be served personally or sent by mail."

[5]The pre-1972 language provides in relevant part:

"The owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building mentioned in and subject to sections twenty-one, twenty-four to twenty-eight, inclusive, and thirty shall cause the provisions of said sections relative thereto to be complied with, and such person shall be liable to any person injured for all damages caused by a violation of any said provisions."

St. 1945, c. 510.

[6]General Laws c. 143, § 21, as amended prior to 1972, dealt with "egresses or other means of escape from fire" for buildings listed therein. St. 1913, c. 655, § 20, as amended prior to 1972.

[7]The Legislature amended § 51 in 1992 by adding two sentences, St. 1992, c. 66, § 1; the following year, those sentences were deleted. St. 1993, c. 495, § 35. For the historical context giving rise to these legislative actions, see *St. Germaine* v. *Pendergast*, 411 Mass. 615 (1992), and *St. Germaine* v. *Pender-*

language of the new version omitted the reference to the particular sections dealing with fire safety and, in its place, inserted language imposing strict liability for violations of "any" of the "provisions of [G. L. c. 143] and the state building code." St. 1972, c. 802, § 35. The plain meaning of this language, and the fact that it replaced a narrower reference·to particular statutory provisions, suggests that the Legislature intended the current version of § 51 to apply to all violations of the State building code, not just those pertaining to fire safety.

The Appeals Court also has reached this view in several of its decisions, which interpreted the 1972 changes to § 51 as requiring notice before an individual may be criminally prosecuted for violating "any provisions of the State building code and related codes." *Commonwealth* v. *Porrazzo*, 25 Mass. App. Ct. 169, 177 (1987). See *Commonwealth* v. *Eakin*, 43 Mass. App. Ct. 693, 697-698 (1997), *S.C.*, 427 Mass. 590 (1998) (requiring notice where violations related generally to conditions affecting habitability); *Commonwealth* v. *Duda*, 33 Mass. App. Ct. 922, 923 & n.1 (1992), quoting 780 Code Mass. Regs. § 121.1 (1980) ("[§ 51's] statutory notification in writing is a condition precedent to criminal prosecutions for violations of the State Building Code," including use of structure "in violation of any of the provision[s] of this code").

However, in a decision issued in 1999, we relied upon our 1965 decision, *Festa* v. *Piemonte*, 349 Mass. at 761, for the proposition that "none of the benefits of G. L. c. 143, [§ 51,] is 'available to persons using stairways and egresses for purposes other than escape from danger from fire.' " See *McAllister, supra* at 304 n.5. *McAllister* involved a tenant who had slipped on ice that had accumulated on the exterior stairs of the defendant's property, and brought claims of negligence, breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, and violation of the lease. *Id.* at 301. The tenant sought a jury instruction that, pursuant to § 51, a property owner "shall be liable . . . [for] a violation of the State Building Code"; this request was denied. *Id.* at 304 n.5. On appeal to this court, the asserted error was summarily rejected in a footnote citing *Festa*

___

*gast*, 416 Mass. 698 (1993). Neither amendment altered the language at issue in this case, and the amendments do not affect our analysis.

v. *Piemonte, supra.* See *McAllister, supra.*[8] The Weavers rely on *McAllister* to support their argument that they may not be held strictly liable under § 51 because, when he fell, Sheehan was not using the staircase to flee from a fire.

That footnote, however, has since come under scrutiny. In *Fox* v. *The Little People's Sch., Inc.,* 54 Mass. App. Ct. 578, 581 (2002), the Appeals Court, endeavoring to reconcile the holding in *McAllister* with the language of § 51, described the decision as having "imported into the new § 51 the fire safety concerns the old statute embodied." On that basis, the court concluded that "controlling cases regard the pedigree of [G. L.] c. 143, § 51, as a limitation on its facially broad language," but noted also that it might have interpreted § 51 differently were it "writing on a clean slate." *Id.* at 582.

Since our decision in *McAllister,* we have described § 51 more broadly as "a statute that imposes strict liability on the property owner (among others) for injuries resulting from building code violations." *Banushi* v. *Dorfman,* 438 Mass. 242, 242 (2002) (*Banushi*). Although we rejected the plaintiffs' strict liability claim in *Banushi* because the structure at issue was not a "building" for purposes of § 51, see *id.* at 245, we apparently assumed that the broadly defined scope of § 51 applied where the claimed building code violations pertained to debris cleanup. See *id.* at 243, 245 n.8. See also *Glidden* v. *Maglio,* 430 Mass. 694, 698 & n.8, 699 (2000) (rejecting plaintiff's claim under § 51 not because violation was unrelated to fire safety but for fact-based reason that violation did not cause plaintiff's injuries).

Relying on *Commonwealth* v. *Rivera,* 445 Mass. 119, 127-128 (2005), and *Commonwealth* v. *Dunne,* 394 Mass. 10, 20 (1985), the Weavers contend that the Legislature's silence since our decision in *McAllister* demonstrates tacit approval of *Mc-Allister's* interpretation of § 51. As suggested by the cases they cite, however, the principle that legislative approval can be derived from legislative silence carries its greatest force when

---

[8]The defendant's brief in that case similarly cited *Festa* v. *Piemonte,* 349 Mass. 761, 761 (1965), and none of the parties noted the intervening 1972 amendment. Therefore, although the footnote constituted part of the holding, we reached that decision "without the benefit of the vigorous advocacy on which the adversary process relies." See *Commonwealth* v. *Rahim,* 441 Mass. 273, 284 (2004).

the Legislature has reenacted or amended a statute without disturbing the judicial construction placed on it. See *Commonwealth* v. *Rivera, supra* at 128, quoting *Nichols* v. *Vaughan*, 217 Mass. 548, 551 (1914) ("when a statute after having been construed by the courts is reenacted without material change, the Legislature are presumed to have adopted the judicial construction put upon it"); *Commonwealth* v. *Dunne, supra* (noting that Legislature's "reenactments and amendments of" specified statutes "have not attempted to alter our decisions"). Otherwise, "legislative inaction following a judicial interpretation of a statute provides frail evidence that the Legislature approves of the court's interpretation." *Ferriter* v. *Daniel O'Connell's Sons*, 381 Mass. 507, 526 n.26 (1980), superseded on other grounds by St. 1985, c. 572, § 35. See *Suffolk Constr. Co.* v. *Division of Capital Asset Mgt.*, 449 Mass. at 457 n.18, quoting *Franklin* v. *Albert*, 381 Mass. 611, 615-616 (1980) ("The practicalities of the legislative process furnish many reasons for the lack of success of a measure other than legislative dislike for the principle involved in the legislation"). Given that the Legislature has not revisited § 51 since *McAllister*, we do not take its silence as tacit approval of our construction of the statute in that case.

For the foregoing reasons, we now overrule the holding in *McAllister* and determine that, in accordance with the plain language of the statute, and considered in light of the prior legislation it replaced, § 51 applies to any violations of G. L. c. 143 and the State building code.[9]

b. *Definition of "building."* The Weavers contend also that the Rantoul structure does not qualify as a "building" under § 51. As noted, § 51 applies to the party in control of "a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building." General Laws c. 143, § 1, provides that "unless a contrary meaning is required by the context," the term "building" as used in that chapter broadly

---

[9]We acknowledge the Boston Housing Authority's concern that a broad construction of § 51 may expose local housing authorities to unanticipated, adverse financial consequences. As discussed, we are of the view that the plain language of § 51 dictates our construction. The Legislature has the authority to amend or clarify the statute if it intended a different construction. Cf. *Commonwealth* v. *Eakin*, 427 Mass. 590, 592 (1998).

refers to "a combination of any materials, whether portable or fixed, having a roof, to form a structure for the shelter of persons, animals or property."[10] The context in which the term "building" appears in § 51, however, requires a more narrow construction. Applying the broad definition in G. L. c. 143, § 1, "would render the remaining words in the listing superfluous." *Banushi*, 438 Mass. at 245. See *Commonwealth* v. *Eakin*, 427 Mass. 590, 592 (1998) (*Eakin*); *Santos* v. *Bettencourt*, 40 Mass. App. Ct. 90, 92 (1996) (*Santos*). Our decisions therefore have interpreted the term "building" pursuant to the doctrine of ejusdem generis: "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Banushi*, *supra* at 244, quoting 2A N.J. Singer, Sutherland Statutory Construction § 47.17, at 273-274 (6th ed. rev. 2000). See *Eakin*, *supra*; *Santos*, *supra*. This principle permits "the specific words to identify the class and [restricts] the meaning of general words to things within the class." *Commonwealth* v. *Zubiel*, 456 Mass. 27, 31 (2010), quoting 2A N.J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 47.17, at 379 (7th ed. 2007).

Adopting this principle, we have described the class of structures covered by § 51 as "places of public or commercial use, places of assembly or places of work." *Banushi*, *supra*. See *Santos*, *supra* ("We need not define the class precisely except to note that it is characterized by public and commercial structures and that the context does not encompass a single family house"). On this basis, we have determined that the term "build-

---

[10]General Laws c. 143, § 1, provides in pertinent part:

"In this chapter the following terms, unless a contrary meaning is required by the context or is specifically prescribed, shall have the following meanings:

". . .

" 'Building', a combination of any materials, whether portable or fixed, having a roof, to form a structure for the shelter of persons, animals or property. For the purpose of this definition 'roof' shall include an awning or any similar covering, whether or not permanent in nature. The word 'building' shall be construed where the context requires as though followed by the words 'or part or parts thereof'."

ing" does not encompass a single-family house, see *Eakin,* 427 Mass. at 592, citing *Santos, supra,* or an owner-occupied two-family home in which the owner rents one of the units to a tenant. See *Banushi, supra* at 244. See also *Osorno* v. *Simone,* 56 Mass. App. Ct. 612, 612-613 (2002) ("building" does not encompass thirteen-unit condominium, in which three units are rented or leased). Although the lack of commercial or public character sufficed to exclude from the definition of "building" the small-scale residential structures at issue in these cases, we did not intend the terms "commercial" and "public" "to define the class encompassed by the statute . . . precisely, . . . preferring to leave that either to the Legislature or to development on future factual records." *Banushi, supra* at 244, citing *Santos, supra* at 92.

As indicated by our prior decisions, what all of the commercial and public structures listed in § 51 have in common is that they are places in which a large number of people gather for occupational, entertainment, or other purposes. Accordingly, that an owner of a small-scale residential structure derives income therefrom does not make it "the type of commercial, public use, assembly, or workplace structure contemplated by the statute."[11] *Banushi, supra* at 244. Likewise, merely because portions of a structure are "accessible to the general public" does not necessarily bring the structure within the statute. See *Osorno* v. *Simone,* 56 Mass. App. Ct. at 613. Rather, the structure must have been "designed and maintained for continuing public assembly." *Id.* at 619.

This interpretation properly focuses § 51 on structures in which building code violations pose a risk to a significant number of people, each of whom is ordinarily poorly positioned to determine whether the structure complies with the safety requirements in the building code. Cf. *id.* It also prevents an expansion of the

---

[11]It makes no difference that the Weavers' rental of the entire Rantoul structure qualifies as "trade" or "commerce" under G. L. c. 93A. See *Linthicum* v. *Archambault,* 379 Mass. 381, 387 (1979), overruled on other grounds by *Knapp Shoes, Inc.* v. *Sylvania Shoe Mfg. Corp.,* 418 Mass. 737 (1994). That statute regulates commercial activity for the particular purpose of "providing proper disclosure of information to consumers and . . . encourag[ing] an equitable balance between consumers and businesses." *Greenfield Country Estates Tenants Ass'n, Inc.* v. *Deep,* 423 Mass. 81, 84 (1996).

scope of strict liability beyond that which the Legislature evidently intended. See *Banushi, supra* at 244, quoting *Santos, supra* at 94 ("The large number of owners of [owner-occupied two-family homes] in the Commonwealth should not be exposed to expanded civil liability deriving from the regulatory provisions of [c.] 143 except by express and clear legislation evidencing that intention").

Our prior decisions have not addressed the extent to which § 51 applies to a structure that contains both commercial and residential uses. We conclude that § 51 contemplates that, in some instances, the term "building" may encompass only a portion of a larger structure. After defining the term "building" for purposes of the chapter, G. L. c. 143, § 1, adds that "[t]he word 'building' shall be construed where the context requires as though followed by the words 'or part or parts thereof.' " Although the list of other structures in § 51 demonstrates that the Legislature did not intend the broad definition of "building" contained in G. L. c. 143, § 1, to apply to the term as used in § 51, see *supra*, the structures listed support construing "building" in that section as followed by "or part or parts thereof." The listed structures include some that may occupy only a portion of a larger structure. See, e.g., G. L. c. 143, § 1 (defining "[t]heatre" as "a building *or part thereof* in which it is intended to make a business of the presentation of performances for the entertainment of spectators" [emphasis supplied]). See generally G. L. c. 149, § 1 (defining "[w]orkshop" for purposes of another statute as "any premises, *room* or place . . . wherein manual labor is exercised by way of trade" [emphasis supplied]).

The case before us presents an appropriate circumstance in which to treat portions of a structure separately for purposes of § 51. The Rantoul structure constituted a mixed-use business-residential structure, in which the business and residential components were segregated. The chiropractor's office occupied the first floor while the residential apartments occupied the second and third floors. The State building code applies different rules to the different portions of a mixed-use structure. See 780 Code Mass. Regs. § 101.1 (2010), adopting International Building Code § 508 (2009); International Building Code § 1004.9,

adopted by 780 Code Mass. Regs. § 101.1 ("Where a building contains two or more [uses], the *means of egress* requirements shall apply to each portion of the building based on the [use] of that space"). Additionally, the residential tenants in the Rantoul structure had their own entryways separate and apart from the chiropractor's office. Therefore, the residential portion of the Rantoul structure was both legally and structurally distinct from the business portion, and we treat it separately for purposes of § 51.

Because the building code violations and Sheehan's injury both occurred in the residential portion of the Rantoul structure, we consider whether that portion is a "building" within the meaning of § 51. The evidence indicates that the residential portion of the Rantoul structure was not used as a place for a large number of people to gather. The structure contained only three residential apartments, and only two of these apartments utilized the staircase and landing whose defects resulted in Sheehan's injury. Hence, the structure at issue does not qualify as a "building" under § 51.

*Conclusion.* So much of the order denying the motion for judgment notwithstanding the verdict as relates to the claim under G. L. c. 143, § 51, is reversed. The remainder of the order is affirmed. The matter is remanded to the Housing Court for further proceedings consistent with this decision.

*So ordered.*