APPEALS COURT 
 
 JOHN B. BARRANCO vs. CONTRIBUTORY RETIREMENT APPEAL BOARD & another[1]

 
 Docket:
 23-P-217
 
 
 Dates:
 May 8, 2024 - August 29, 2024
 
 
 Present:
 Meade, Blake, & Brennan, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Public Employment, Retirement. Retirement. Pension. Teachers' Retirement Board. Municipal Corporations, Retirement board, Pensions. Contributory Retirement Appeal Board. School and School Committee, Retirement benefits. Administrative Law, Agency's authority. Notice. Due Process of Law, Administrative hearing. Practice, Civil, Judgment on the pleadings
 
 

             Civil action commenced in the Superior Court Department on February 3, 2020.
            The case was heard by Christine M. Roach, J., on motions for judgment on the pleadings.
            Meredith G. Fierro for the plaintiff.
            Ashley E. Freeman for Massachusetts Teachers' Retirement System.
            David R. Marks, Assistant Attorney General, for Contributory Retirement Appeal Board.
            BLAKE, J.  The plaintiff, John B. Barranco, served as the executive director of both the Merrimack Special Education Collaborative (collaborative)[2] and the Merrimack Education Center, Inc. (MEC).  After his retirement from the collaborative, Barranco began collecting a pension from the Massachusetts Teachers' Retirement System (MTRS).  While receiving those payments, Barranco continued to serve as the executive director of MEC.  Following decisions by MTRS, the Division of Administrative Law Appeals (DALA), and the Contributory Retirement Appeals Board (CRAB) that Barranco received earnings from MEC that violated the postretirement earnings limits set forth in G. L. c. 32, § 91, Barranco filed a complaint for judicial review in the Superior Court pursuant to G. L. c. 30A, § 14.  On cross motions for judgment on the pleadings, a Superior Court judge affirmed CRAB's decision.  This appeal followed.  We affirm.
            Background.  Barranco began his career as a public school teacher in 1965, teaching in Haverhill and Boston.  He later transitioned into administrative roles in Boston and Ipswich and eventually became the superintendent of the Groton-Dunstable Regional School District.  In 1993, Barranco became the executive director of both the collaborative and MEC, maintaining those roles simultaneously until his retirement from the collaborative in 2005.  Following his retirement, Barranco continued to serve as the executive director of MEC.[3]  In 2005, Barranco applied for and was granted superannuation retirement by MTRS.  His retirement benefit of $155,952.36 per annum was calculated using the average of Barranco's regular compensation earned during his last three years as executive director of the collaborative; the calculation excluded Barranco's earnings from MEC.
            MEC is a private, nonprofit company that provides logistical and administrative support to schools and towns and, as relevant here, to the collaborative.[4]  In a filing with the Internal Revenue Service, MEC described the collaborative as a related organization and, on its website, listed the collaborative as a subdivision of MEC.  Similarly, the collaborative described itself as an affiliate of MEC.  In June 2006, the collaborative and MEC entered into an administrative services agreement (agreement).  Under this agreement and a November 2007 amendment, MEC agreed to continue to provide services to the collaborative, stating that the collaborative was "subject to the general management and oversight of the MEC Executive Director and/or designee."  The agreement also provided that administrative staff services expenses would be allocated based on revenue such that a portion of Barranco's MEC salary was allocated to the collaborative.[5]  In 2009, MEC and the collaborative entered into a new administrative services agreement.  Although the provision about the collaborative being under the general management of MEC did not appear in the new agreement, administrative staff services expenses continued to be allocated based on revenue.
            When MTRS learned of Barranco's continued role at MEC in overseeing the collaborative after his retirement therefrom, it began an investigation.  Following an informal hearing in which Barranco participated but refused to produce all requested documents, the hearing officer issued a written decision.  Concluding that twenty-five percent of Barranco's earnings were attributable to the collaborative,[6] the hearing officer found that the same percent of Barranco's postretirement earnings from MEC were for services rendered to the government, and that Barranco had received $51,242.22 in excess of the statutory limit under G. L. c. 32, § 91.
            MTRS adopted the hearing officer's decision and recouped $51,242.22 from Barranco by withholding sums from his pension payments.  Barranco appealed from MTRS's decision to DALA pursuant to G. L. c. 32, § 16 (4).  While the DALA appeal was pending, MTRS received new documents from the Office of the Inspector General that showed that MEC charged fifty-five percent of Barranco's salary to the collaborative.  The hearing officer reopened the investigation and issued a revised decision concluding that Barranco had earned total excess earnings of $815,746.77 in violation of § 91.  Barranco again appealed to DALA.  DALA affirmed MTRS's decision.  Barranco appealed to CRAB, which adopted DALA's findings and affirmed DALA's decision that MTRS properly calculated and recouped (through pension payment withholdings) Barranco's excess earnings.
            Discussion.  Barranco contends that CRAB erred in holding that G. L. c. 32, § 91, authorized MTRS to withhold sums from Barranco's pension payments based on his postretirement earnings for three reasons.  First, he claims that § 91 "does not apply" to the collaborative.  Second, he claims that § 91 "does not prohibit a public retiree from receiving postretirement compensation from a private employer."  And third, he claims that § 91 does not authorize MTRS to seize Barranco's "private wages."  We address each argument in turn.
            1.  Standard of review.  Our standard of review is well established.  Pursuant to G. L. c. 30A, § 14, we ask "whether [CRAB]'s decision was unsupported by substantial evidence, arbitrary and capricious, or otherwise based on an error of law."  Arlington Contributory Retirement Bd. v. Contributory Retirement Appeal Bd., 75 Mass. App. Ct. 437, 441 (2009).  We defer to CRAB's expertise, even when conducting a de novo review of legal questions.  See id.  However, "we are not bound by what we believe is [CRAB]'s erroneous interpretation of its statutory authority" should we disagree with CRAB's interpretation.  Bristol County Retirement Bd. v. Contributory Retirement Appeal Bd., 65 Mass. App. Ct. 443, 451 (2006).  "All rational presumptions must be applied in favor of [CRAB]'s action."  Arlington Contributory Retirement Bd., supra.  It was Barranco's burden to demonstrate that CRAB's decision was in error.  See Massachusetts Ass'n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 263 (2001).
            2.  Statutory framework.  The payment of public pensioners for public service rendered after retirement is governed by G. L. c. 32, § 91.  The statute was designed to address "[a] pivotal concern . . . that, except in precisely limited circumstances, a member of the public employee retirement system who is receiving retirement benefits not accept other public employment and not become eligible for a separate pension."  Bristol County Retirement Bd., 65 Mass. App. Ct. at 446.  Put differently, "an employee of a governmental unit in Massachusetts generally may not retire, receive a pension, accept employment elsewhere in the government, and, by combining [his] pension and [his] new compensation, make more money than if [he] had not retired."  Id. at 447.
            Under § 91, an individual who collects "benefits via a State or local retirement program may generally not be paid for services rendered to the State or locality."  Pellegrino v. Springfield Parking Auth., 69 Mass. App. Ct. 94, 97 (2007).  When Barranco retired in 2005, § 91 (a), as amended through St. 1996, c. 450, § 91, provided that "no person while receiving a pension, disability pension or retirement allowance from the commonwealth, or from any county, city, town or district shall, after the date of his retirement be paid for any service rendered to the commonwealth or any county, city, town or district."[7]
            There are exceptions to the general limit on postretirement earnings.  When Barranco retired in 2005, § 91 (b), as amended through St. 1994, c. 367, § 1, provided that, if the public pensioner's postretirement public employment earnings were "not more than nine hundred and sixty hours in the aggregate, in any calendar year," the earnings were excluded from the general limitation so long as "the earnings . . . when added to any pension or retirement allowance . . . [did] not exceed the salary that [was] being paid for the position from which [the public pensioner] was retired."  See Bristol County Retirement Bd., 65 Mass. App. Ct. at 447.
            3.  Section 91's applicability to the collaborative.  Barranco contends that § 91 applies only to public pensioners who render services to certain specified public entities and that the collaborative is not one of those entities.  We are not persuaded.  By statute, an education collaborative, through its board of directors, is a public employer, and thus a public entity.  See G. L. c. 40, § 4E.  Section 4E provides for the creation, management, and funding of education collaboratives.  They are joint projects of their member municipalities and school districts.  See Superintendent of Sch. of Leominster v. Mayor of Leominster, 386 Mass. 114, 120 n.13 (1982).  Additionally, municipal school districts, which include education collaboratives, may sue or be sued to the same extent as a city or town.  See G. L. c. 40, § 1B.  And, for the purpose of qualifying for surplus Federal property, see 40 U.S.C. § 550(c)(1), education collaboratives are considered instrumentalities of the Commonwealth, see Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 129-131 (1977).
            That education collaboratives are not among the entities specifically listed in § 91 (a) is of no moment.  We agree with the Superior Court judge that it was reasonable for CRAB to conclude that work done for the collaborative was in fact the provision of services to entities (the municipalities and school districts) that are expressly included in § 91 (a).  See, e.g., Lydon v. Contributory Retirement Appeal Bd., 101 Mass. App. Ct. 365, 371 (2022).
            4.  Barranco's work for a private entity.  Barranco next argues that because he worked for MEC -- a private entity -- § 91 is inapplicable and, therefore, the withholding of sums from his pension payments was unlawful.  MTRS and CRAB agree that MEC is a private entity but argue that Barranco's work at MEC constituted services rendered to the collaborative, a public entity, and therefore fell within the ambit of § 91.
            To resolve this question, we first turn to the language of the statute where "[o]ur primary duty . . . is to effectuate the intent of the Legislature in enacting it" (quotation and citation omitted).  Sheehan v. Weaver, 467 Mass. 734, 737 (2014).  "We . . . presume, as we must, that the Legislature intended what the words of the statute say" (quotation and citation omitted).  Id.  However, we do not interpret statutory language to render it meaningless.  See Williams v. Board of Appeals of Norwell, 490 Mass. 684, 690 (2022).
            At the time of Barranco's retirement, § 91 (a) provided that "[n]o person while receiving a pension, disability pension or retirement allowance from the commonwealth, or from any county, city, town or district shall, after the date of his retirement be paid for any service rendered to the commonwealth or any county, city, town or district."  Here, the question is the meaning of "any service."[8]  We begin our analysis with the understanding that the Legislature intended the broadest, most comprehensive interpretation of the contested language.  This is so because "service" is preceded by "any" in the statute.  See Hollum v. Contributory Retirement Appeal Bd., 53 Mass. App. Ct. 220, 223 (2001) (natural meaning of word "any" is "all" or "every").  If the Legislature intended to restrict postretirement earnings to individuals directly employed by the government, it could have done so.  However, it did not, and we will not impose such a limitation.  See Plymouth Retirement Bd. v. Contributory Retirement Appeal Bd., 483 Mass. 600, 604 (2019) (we will not create exception where statute did not include one).
            Further evidence of the Legislature's intent can be found in extensive amendments to G. L. c. 32, including to § 91, made in 2009.  Prior to the amendments, we decided Flanagan v. Contributory Retirement Appeal Bd., 51 Mass. App. Ct. 862, 866-868 (2001), where we held, in a case involving an independent contractor, that the State Board of Retirement was authorized to recover pension benefits received in violation of § 91.  We later emphasized that § 91 applied to "any service rendered" to a public entity (citation omitted).  Pellegrino, 69 Mass. App. Ct. at 99.  We presume that the Legislature was aware of our decisions when it amended the statute.  See Alves's Case, 451 Mass. 171, 180 (2008).  However, the 2009 amendments did not alter the "any service" language.  See St. 2009, c. 21.  "When the Legislature revisits and amends a statute without changing the language at issue after a court or agency has construed it, we may conclude that the Legislature intended to incorporate authoritative agency and judicial interpretations of the language into the amended statute."  Pavian, Inc. v. Hickey, 452 Mass. 490, 494 (2008).
            Barranco asks us to read "any service" narrowly to include only service in which an individual is directly employed by the government.  That would mean that postretirement earnings from education services provided directly to a municipal school district would be subject to § 91, but those same derived from services provided to a municipal school district through an education collaborative would not.  This would lead to an unreasonable result and would defeat the legislative intent of § 91  -- to disallow public pensioners from drawing retirement benefits and, at the same time, continuing to earn from public work.  See New England Power Generators Ass'n, Inc. v. Department of Envtl. Protection, 480 Mass. 398, 411 (2018) (where sensible construction is available, we will not adopt interpretation that leads to illogical result).
            Barranco's reading of the statute also contravenes established case law.  See e.g., Pellegrino, 69 Mass. App. Ct. at 99 ("§ 91 [a] generally prohibits anyone who is receiving a city or State pension not only from being employed by the city, but also from being paid for any service rendered thereto" [quotation omitted]); Flanagan, 51 Mass. App. Ct. at 868 (no exception for "other contractors" in limited exception under § 91 [a] for services rendered "to the general court").
            Here, there was substantial evidence that Barranco rendered services to the collaborative, paid by public funds, while collecting his MTRS pension.  As CRAB found, Barranco exercised "significant control over management of the [c]ollaborative" while serving as executive director of MEC.  In fact, all of Barranco's job duties at the collaborative followed him to his employment with MEC.  See Pellegrino, 69 Mass. App. Ct. at 96 (job duties did not change from working in public employment to postretirement job).  The interconnected relationship between Barranco, MEC, and the collaborative is perhaps best illustrated by the agreements that obligated the collaborative to pay fifty-five percent of Barranco's MEC annual salary.  Moreover, the 2007 amendment explicitly stated that the collaborative was under the "general management oversight of [Barranco as] the MEC Executive Director."  We therefore conclude that it was reasonable for CRAB to hold that Barranco's service to the collaborative, through his role at MEC, subjected him to the limits established by § 91.
            5.  Recoupment.  Barranco contends that MTRS did not have the authority to seize his excess earnings because the words "retirement system" or "retirement board" do not appear in § 91 (c), the portion of the statute that governs recovery of excess earnings.  General Laws c. 32, § 20 (5) (b), gives retirement systems the authority to "adopt by-laws and make rules and regulations consistent with law."  As CRAB noted, we have held that MTRS used its "implicit authority under G. L. c. 32, § 20 (5) (b)" to implement a recoupment of excess earnings.  Flanagan, 51 Mass. App. Ct. at 868.  Barranco suggests that Flanagan was wrongly decided, in part because the pensioner did not file an appellate brief in the case.  However, we have reaffirmed Flanagan and decline to revisit it.  See Bristol County Retirement Bd., 65 Mass. App. Ct. at 448 (in absence of return of funds to employing agency, excess earnings may be recovered by retirement board).
            Furthermore, Barranco claims that the recoupment of his excess earnings raises constitutional questions.  The record belies this claim.  Barranco was on notice that receipt of pension payments came with certain conditions regarding additional earnings.  See, e.g., Bristol County Retirement Bd., 65 Mass. App. Ct. at 448.  He agreed to the § 91 limitations by accepting his pension payments.  See National Ass'n of Government Employees v. Commonwealth, 419 Mass. 448, 454, cert. denied, 515 U.S. 1161 (1995) (law at time of agreement "necessarily enters into and becomes part of the agreement").  Barranco's property rights were not impaired as recoupment of excess earnings is consistent with the retirement scheme.
            Finally, Barranco was provided with due process throughout the numerous hearings, reviews, and appeals of this case.  Ultimately, he was unable to meet his burden of proof.  Simply put, the funds at issue were "illegal as matter of law given [Barranco's] concurrent receipt of retirement benefits."  Pellegrino, 69 Mass. App. Ct. at 101.
Judgment affirmed.

footnotes
 
            [1] Massachusetts Teachers' Retirement System.
            [2] As discussed in detail, infra, the collaborative is a public entity created under G. L. c. 40, § 4E, to serve the children of several school districts in the region.
            [3] In his role as the executive director of MEC, Barranco oversaw the collaborative's finances, signed employment contracts, oversaw staff layoffs, and decided which programs the collaborative ran.
            [4] This work includes maintaining bank accounts and providing support with bookkeeping, human resources, technology services, and insurance.
            [5] For fiscal years 2006-2007 and 2007-2008, fifty-five percent of Barranco's MEC salary was allocated to the collaborative.
            [6] The hearing officer reasoned that because the collaborative was one of four divisions of MEC, twenty-five percent of Barranco's earnings were attributable to work done for services rendered to the government (i.e., the collaborative).
            [7] As Barranco notes, the statute was amended in 2009 to add "authority" to the listed entities.  See St. 2009, c. 21, § 20.  The statute was also amended to add "consultant[s] [and] independent contractor[s]" to the exceptions set forth in § 91 (b) to the general limit on postretirement earnings.  See St. 2009, c. 21, § 21.  Nothing in our decision turns on these differences.
            [8] Barranco argues that because his preretirement employment with MEC did not count toward his creditable service when MTRS calculated the amount of his pension payments, his postretirement employment with MEC should not be considered service.  The argument conflates "creditable service" with "service."  Creditable service for purposes of public retirement is defined as "all membership service."  G. L. c. 32, § 1.  By contrast, service for purposes of § 91 is defined as "service as an employee in any governmental unit for which regular compensation is paid."  G. L. c. 32, § 1.